**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THE SCHOOL BOARD OF VOLUSIA COUNTY,**

**Plaintiff,**

**CASE NO:**

**vs.**

**AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, ALLIED WORLD INSURANCE COMPANY AND STARSTONE SPECIALITY INSURANCE COMPANY,**

**Defendants.**
**_______________________________________/**

# COMPLAINT

**COMES NOW**, Plaintiff, THE SCHOOL BOARD OF VOLUSIA COUNTY hereinafter ("PLAINTIFF" or "VOLUSIA COUNTY") by and through the undersigned counsel, and hereby sues Defendants, AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, ALLIED WORLD INSURANCE COMPANY and STARSTONE SPECIALITY INSURANCE COMPANY, hereinafter ("DEFENDANTS" or "INSURERS") and as grounds therefor states as follows:

## JURISDICTION & VENUE

1. At all times material hereto, Plaintiff owned, maintained and procured insurance on the property located at 100 Wolf Pack Run, Deltona, FL 32725 otherwise known as Deltona High School, and referred to herein as "the subject property."

2. Plaintiff also conducts its business in Volusia County, including holding board meetings, making important decisions regarding the County's school system, and throwing events that help benefit the Volusia County school system.

3. Plaintiff, THE SCHOOL BOARD OF VOLUSIA COUNTY, is a citizen of Florida.

4. Defendant, AXIS SURPLUS INSURANCE COMPANY, is incorporated in the State of Illinois with its principal place of business in the State of Georgia.

5. Defendant, EVEREST INDEMNITY INSURANCE COMPANY, is incorporated in the State of Delaware with its principal place of business in the State of New Jersey.

6. Defendant, ALLIED WORLD INSURANCE COMPANY, is incorporated in the State of New Hampshire with its principal place of business in the State of New York.

7. Defendant, STARSTONE SPECIALITY INSURANCE COMPANY, is incorporated in the State of Delaware with its principal place of business in the State of Ohio.

8. Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over the subject matter of this lawsuit because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney fees, and because there is complete diversity of citizenship between Plaintiff and Defendants.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the loss that gave rise to this insurance claim occurred at the subject property which is located in Volusia County, a part of this district.

## GENERAL ALLEGATIONS

1. At all times material hereto, Volusia County owned the property located at 100 Wolf Pack Run, Deltona, FL 32725, otherwise known as Deltona High School, or "the subject property."

2. Volusia County procured commercial insurance policies from Axis Surplus Insurance Company (Policy No. EAF637823-01/2021), Everest Indemnity Insurance Company (Policy No. CA3P006695-211), Allied World Assurance Company (Policy No. 0312-8587-1A) and StarStone Specialty Insurance Company (Policy No. E80402210CSP), hereinafter "the policies." Copies of which are attached hereto as **"Exhibit A"**.

3. On or about September 10, 2021, while the policies were in full force and effect, Volusia County filed a claim with Defendants based on extensive cracking in building 10, as observed by one of the school's teachers, on the subject property's premises.

4. The cracking was ultimately verified to be the result of sinkhole activity, a form of earth movement.

5. Shortly after the cracks were observed in Building 10, maintenance professionals of Plaintiff observed cracking throughout the premises, which they also reported to Defendants.

6. In response to the claim being made, the Insurers hired a company called Sedgwick to adjust and service the claims on their behalf. Tracy Mednick was named the point of contact for Sedgwick.

7. Defendants and/or Sedgwick then created separate numbers for each carrier regarding the claim: Axis Claim No. ATL-193028, Everest Claim No. 7-7754, Allied World Claim No. 2021022623 and StarStone Claim No. 4188888.

8. Concerned about the condition of the property (especially as it a high school filled with children and teens daily), Plaintiff retained the services of third-party engineering firm, Universal Engineering Sciences ("Universal"), to inspect the subject property's entire premises, perform a series of tests, including but not limited

to ground penetrating radar, hand auger borings, and twenty-four (24) standard penetration test ("SPT") borings.

9. The Deltona High School campus consists of twenty-four (24) buildings. After Universal completed its geotechnical evaluations throughout the entire premises, it determined that three (3) buildings (i.e., Building 2, 10 and 12) were damaged due to sinkhole activity.

10. As such, Universal created reports outlining its findings with respect to the sinkhole activity found and further made repair protocol recommendations, which consisted of a dual program of low slump grouting and underpinning.

11. Universal provided the Plaintiff with its report of findings and conclusions. That report (and a later revised version) was produced to the Defendants. See October 27, 2022 and December 15, 2023 reports from Universal attached hereto as **"Exhibit B"**.

12. In response, Defendants, through Sedgwick and Tracy Mednick, sent out their own engineering company, Engineering Systems, Inc. ("ESi") to separately inspect the subject property.

13. In its report dated April 28, 2023, ESi, through Andrew W. Johnson, P.E., S.E., concluded that: "Structural Damage, as defined by **§627.706(2)(k)** Florida Statutes, has not been identified at the Deltona High School Building 2, Building 10, and Building 12." A copy of the ESi Report is attached hereto as **"Exhibit C"**.

14. ESi also opined that the observed damage was due to "age-related deterioration of building material, shrinkage of cementitious materials, the expansion and contraction of building materials, and differential settlement over time." *See Id.*

15. Lastly ESi found that "the observed current conditions, management of roof and walkway cover run off, and management of surface water flows around the buildings, is allowing for localized soil erosion and percolation of rainwater in the soils at or near the building foundation contributing to differential settlement of the structure." *See Id.*

16. Defendants, through Sedgwick and Tracy Mednick, then denied coverage for Plaintiff's claim in a letter dated September 28, 2023. Defendants also advised Plaintiff that, "[i]f you disagree with this assessment and believe there are facts bearing on the question of coverage that have yet to be made known to the Insurers, please forward that information to us." The Denial letter is attached hereto as **"Exhibit D"**.

17. Accordingly, The ESi report was forwarded to Universal for its review and consideration. On or about June 27, 2024, Universal prepared a "rebuttal to property damage assessment" which highlighted its disagreements with several points in the ESi report. A copy of this rebuttal is attached hereto as **"Exhibit E"**.

18. There is additional evidence that the Plaintiff's claim was covered, but in fact denied based on an incorrect standard, as applied by Defendants.

19. More specifically, it is the Defendants' position that the "structural damage threshold" must be met here in order to afford the Plaintiff coverage.

20. Under a significant amount of insurance policies in Florida that provide coverage for "sinkhole loss" in Florida, before you can obtain coverage under those scenarios, it must be first determined that there is "structural damage", defined very specifically in a five-prong definition supplied by Florida Statute §627.706(2)(k), and then when or if there is structural damage, it must then be determined whether "sinkhole activity" is causing the observed structural damage.

21. However, here a review of the policies (see Exhibit A), shows that Volusia County purchased a policy that provides broader coverage than just "sinkhole loss," but rather "earth movement," which sinkhole activity is a form of.

22. Accordingly, there is no "structural damage" requirement pursuant to Florida Statute §627.706(2)(k) as the Insurers purport.

23. Nonetheless, even if such a threshold must be met per the policies, Universal does believe that prong §627.706(2)(k)(4) as it relates to imminent collapse has been met at the subject property. See Exhibit E.

24. Thus, even under the Insurers' theory of this claim, Volusia County should be afforded coverage.

25. The policies define "Earth Movement" as follows:

> D. Earth Movement means any natural or manmade:
>
> 1. Earthquake, including any earth sinking, rising or shifting related to such event;
> 2. Landslide, including any earth sinking, rising or shifting related to such event;
> 3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;
> 4. Earth sinking rising or shifting **including soil conditions which cause settling, cracking or other disarrangement of foundations** or other parts of realty. **Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface**;
> 5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, **sinkhole collapse, subsidence**; and includes tsunami.

See "Exhibit A" (emphasis added).

26. Regardless of whether the cause of loss is based upon Universal's opinion and conclusions or ESi's opinion and conclusions, the loss is covered under the terms of the policies.

27. Instead, the Defendants maintained their denial of coverage, which forced the Plaintiff to come out of pocket nearly six (6) million dollars to effectuate the repairs, and ensure the building was safe for its children, teens, administrators, teachers, and staff.

28. Since reporting the claim, Plaintiff has fully cooperated with Defendants in their investigation of the same, including but not limited to, permitting multiple representatives to come and inspect the subject premises, by providing

documentation and other requested information to Sedgwick, ESi, MKA International, and most recently Defendants' attorneys, and by attempting to resolve the matter through pre-suit mediation and pre-litigation procedure as contemplated under Fla. Stat. § 627.70152.

29. Plaintiff mitigated what could have been a catastrophic or even deadly loss by paying to perform to do the repair protocols on its own, so as to protect the life, health, safety and welfare of the children, teens, administrators, teachers and other staff who are at the school on a daily basis. It should have been Defendants who paid for the testing and repairs relating to the loss, but they refused to do so.

30. All conditions precedent to filing this lawsuit have been complied with, including the pre-suit notice requirement pursuant to Fla. Stat. § 627.70152, or the conditions have been waived or estopped by Defendants' actions and/or omissions.

## COUNT I - BREACH OF CONTRACT

31. Plaintiff re-alleges and incorporates by reference paragraphs one (1) through thirty (30) as though fully set forth herein.

32. Plaintiff and Defendants are parties to valid and binding contracts of insurance which require Defendants to provide benefits to Plaintiff in the event of a covered loss to the subject property.

33. Plaintiff has suffered a covered loss under the policies.

34. Defendants breached the policies by failing to pay benefits to which Plaintiff is entitled for the loss, and by otherwise wrongfully denying coverage for the claim.

35. Plaintiff has been damaged by Defendants' breach of the policies.

36. Plaintiff is entitled to compensation for Defendants' breach of the policies.

**WHEREFORE**, Plaintiff, THE SCHOOL BOARD OF VOLUSIA COUNTY demands judgment against the Defendants, AXIS SURPLUS INSURANCE COMPANY, EVEREST INDEMNITY INSURANCE COMPANY, ALLIED WORLD INSURANCE COMPANY and STARSTONE SPECIALITY INSURANCE COMPANY, to include:

a) Reimbursement for the repairs Plaintiff had to fund on its own;
b) Plaintiff's Attorney fees pursuant to Florida Statutes §627.428 and § 626.9373;
c) Plaintiff's taxable costs;
d) Pre-judgment and post-judgment interest;
e) And granting any other relief as the Court finds just and appropriate under the circumstances.

Plaintiff also requests a Jury Trial on all issues so triable.

**[SEE SIGNATURE BLOCK ON NEXT PAGE]**

**Dated: August 21, 2026**

DANAHY & DUNNAVANT, P.A.

/s/ *Erin E. Dunnavant*
______________________________
**ERIN E. DUNNAVANT, ESQUIRE**
Florida Bar No. 89328
**CHAD L. YOUNG, ESQUIRE**
Florida Bar No. 1018819
901 W. Swann Avenue
Tampa, FL 33606
Phone: (813) 906-1841
Fax: (813) 579-1912
E-service: erin@danddlaw.com
chad@danddlaw.com
ivette@danddlaw.com
service@danddlaw.com