PLAINTIFF'S EXHIBIT
A

POLICY NUMBER: EAF637823-21

AXIS

# COMMON POLICY DECLARATIONS

| AXIS SURPLUS INSURANCE COMPANY<br>111 SOUTH WACKER DRIVE, SUITE 3500<br>CHICAGO, IL 60606 | MACDUFF UNDERWRITERS, INC,<br>1717 N CLYDE MORRIS BLVD, SUITE 120<br>DAYTONA BEACH, FL 32117 |
|---|---|

NAMED INSURED: The School Board of Volusia Co
MAILING ADDRESS: PO Box 2118
Deland, FL 32721
POLICY PERIOD: FROM May 01, 2021 TO May 01, 2022 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

| BUSINESS DESCRIPTION | School Board |
|---|---|

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | **PREMIUM** |
|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ |
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ |
| COMMERCIAL PROPERTY COVERAGE PART | $ 450,000 |
| CRIME AND FIDELITY COVERAGE PART | $ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ |
| FARM COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| POLLUTION LIABILITY COVERAGE PART | $ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ |
| INSPECTION FEE | $ 750 |
| INSURED PURCHASED TRIA TERRORISM COVERAGE ☒NO ☐ YES | $ |
| **TOTAL:** | $ 450,750 |

Premium shown is payable: $ 450,750 at inception.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY. THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| | |
|---|---|
| 01 | AXIS Surplus Common Policy Declarations – ES 018 1020 |
| 02 | Notice to Policyholder – ES 115 0106 |
| 03 | Policyholder Notice - Florida – AXIS 105 (03-16) |
| 04 | Broker Manuscript Form |
| 05 | Minimum Earned Premium Clause – Percentage – Endorsement A – ES 106 0106 |
| 06 | Covered Locations Endorsement – Endorsement B - AXIS 1012725 0920 |
| 07 | Commercial Property Exclusion Endorsement – Endorsement C – ES 133 0106 |
| 08 | Total Exclusion – Electronic Property and Virus – Endorsement D – ES 033 0106 |
| 09 | Nuclear, Chemical and Biological Exclusion Endorsement – Endorsement E – ES 116 0608 |
| 10 | Cancellation and Nonrenewal Endorsement – Florida – Endorsement F - AXIS 801 FL (10-15) |
| 11 | Notice of Cancellation Change Endorsement – Endorsement G - AXIS-124 (08-15) |
| 12 | Exclusion of Loss or Damage due to Virus or Bacteria – Endorsement H - AXIS 1012682 0520 |
| 13 | Terrorism Exclusion Endorsement – Endorsement I – AXIS TERROR EXCLUSION 01 06 |
| 14 | Service of Suit - Florida – AXIS 106 (04-15) |
| 15 | AXIS Surplus Signature Page – AXIS 102 ASIC (04-15) |
| 16 | Claim Notice – ES 036 0220 |

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**NOTICE TO POLICYHOLDER**

This policy is composed of various forms explaining the insurance coverage provided. It may also include one or more endorsements. Endorsements are documents that change the policy. Endorsements may provide additional coverage to the policy. Endorsements can also restrict or remove coverage provided in the policy. THE POLICY SHOULD BE READ CAREFULLY TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

As the context may require, the words “you”, “your”, “Insured”, and “the Insured” refer to the Named Insured shown on the Declarations Page. The words “we”, “us”, “our”, “Company”, “the Company”, and “this Company” refer to the Company providing this insurance.

**POLICYHOLDER NOTICE**

**FLORIDA**

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**MANUSCRIPT DOMESTIC PROPERTY POLICY**

**SECTION I – COVERAGES AND LIMITS OF LIABILITY**

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A. NAMED INSURED: First Named Insured and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

B. MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS: Per Certificates on File with the Company.

C. COVERAGE TERRITORY: Coverage under this Policy applies to **Occurrences** within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

D. LIMIT OF LIABILITY ("Policy Limit"): This Company's maximum liability in any one Occurrence as a result of all covered loss or damage regardless of the number of Locations, coverages, or perils insured under this Policy shall not exceed:

**$3,000,000 PART OF $10,000,000**

E. SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are subject to and not in addition to the **Policy Limit** shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence** unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.**

1. Earth Movement:

a. $ 25,000,000 Annual Aggregate

Subject to the Annual Aggregate Limit for all Earth Movement shown in Subparagraph E.1.a. above:

b. NOT COVERED Annual Aggregate for all Earth Movement in all of the following states combined: California, Alaska, Hawaii, and Puerto Rico

c. NOT COVERED Annual Aggregate for Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.)

d. NOT COVERED Annual Aggregate for New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.)

2. Flood:

a. $ 25,000,000 Annual Aggregate

b. $ 25,000,000 Subject to the Annual Aggregate Limit for all Flood shown in Subparagraph E.2.a. above, the Annual Aggregate as respects Flood for Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

3. Named Storm: $100,000,000 Regardless of the number of Coverages, Locations or Perils involved including, but not limited to, all Flood (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain, the maximum amount the Company will pay per Occurrence as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression). In the event covered Loss or Damage by Flood arises out of a Named Storm, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Flood shall be the Sublimits of Liability for Flood as shown in Subparagraphs E.2.a. and E.2.b. above. However, if Flood is not covered, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Named Storm shall exclude Loss or Damage by Flood.

4. Debris Removal: The Company's total liability for Debris Removal per Occurrence for all Insured Locations sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

a. 25 % of the amount of covered direct physical loss or damage payable for all Insured Locations; or

b. $ 1,000,000

5. Accounts Receivable: $ 250,000

6. Civil or Military Authority: 30 Days, but in no event will the Company pay more than $ NOT APPLICABLE

7. Contingent Time Element: $ 1,000,000

8. Demolition & Increased Cost of Construction: (See Section VI – Additional Coverages, Paragraph C.)

a. Demolition Coverage A: INCLUDED
b. Demolition Coverage B: $5,000,000
c. Demolition Coverage C: $5,000,000

9. Electronic Data and Media: $ 250,000

10. Equipment Breakdown: $ NOT COVERED

11. Spoilage: $ 250,000

12. Errors and Omissions: $ 100,000, Subject to all other sublimits contained herein.

13. Extended Period of Indemnity: 180 Days

14. Extra Expense: $ 10,000,000

15. Fine Arts: $ 1,000,000

16. Fire Brigade Charges: $ 2,500

17. Ingress/Egress Coverage: 30 Days, but in no event will the Company pay more than $ 2,500,000

18. Leasehold Interest: $ 1,000,000

19. Limited Pollution Coverage: $ 50,000 Annual Aggregate

20. Miscellaneous Unnamed Locations: $ 5,000,000, Subject to all other sublimits contained herein.

21. Newly Acquired Property: 90 Days, but in no event will the Company pay more than $ 1,000,000 Subject to all other sublimits contained herein.

22. Ordinary Payroll: NOT COVERED Days

23. Professional Fees: $ 1,000,000

24. Service Interruption: $10,000,000. Insured physical loss or damage must occur within One (1) state mile from the insured's premises for coverage to apply. A qualifying period of 24 hours applies to this coverage.

25. Transit: $100,000, but no more than $25,000 per Conveyance

26. Valuable Papers and Records: $ 1,000,000

F. MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s),

2. As respects each Location insured by this Policy, one-hundred (100%) percent of the total combined stated values for all categories of Insured Property (e.g. building, contents) and other covered exposures (e.g., time element, extra expense, rental loss) shown for that Location on the latest Statement of Values or other documentation on file with the Company, or

3. The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

G. DEDUCTIBLE: Each claim for loss or damage under this policy shall be subject to a per occurrence deductible amount of $100,000, except $25,000 for Automobile Physical Damage & Inland Marine, unless a specific deductible shown below applies:

1. Flood:

    a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.1.b.:

    b. 3% of Total Insurable Values (TIV) at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ 500,000 any one Occurrence as respects Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

2. Earth Movement:

    a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.2.b, G.2.c., or G.2.d.:

    b. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in California, Hawaii, Alaska, and Puerto Rico;

    c. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.);

    d. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.

3. Windstorm or Hail:

    a. $ 100,000 Per Occurrence, except as follows:

    b. 3% of Total Insurable Values (TIV) "Per Building" at the time of the loss at each location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression), regardless of the number of Coverages, Locations, or Perils involved (including but not limited to, all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum of $500,000 any one occurrence;

4. Time Element: NOT APPLICABLE Days

The following two paragraphs apply to Subparagraphs G.1. through G.4, inclusive:

In each case of loss or damage covered by this Policy, the Company shall not be liable unless the Insured sustains loss or damage in a single Occurrence greater than any applicable deductible described herein and then, if this is a quota share Policy, only for the Company's share in excess of such deductible. When this Policy covers more than one Location, the deductible shall apply against the total loss or damage covered by this Policy in any one Occurrence, unless otherwise stated in this Paragraph G.

If two or more deductible amounts provided in this Policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in this Policy. However, if:

1. The Time Element deductible and another deductible apply to a single **Occurrence**, then the Company shall apply both deductibles to the **Occurrence**; and

2. Covered Loss or Damage by **Flood** arises out of a Named Storm, then the Company shall apply the **Flood** deductible set forth in Subparagraph G.1. or the Named Storm deductible set forth in Subparagraph G.3.b., whichever is greater.

**SECTION II – COVERED CAUSES OF LOSS**

A. PERILS INSURED: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a Covered Cause of Loss. However:

      i. If fire not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

      ii. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

      (1) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

      (2) By military, naval, or air forces; or

      (3) By an agent of any such government, power, authority, or force;

      ii. Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

      iii. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

   Including any consequence of Subparagraphs b.i., b.ii., or b.iii. above.

c. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured, or others listed above without the knowledge of the Insured is covered.

d. Asbestos material removal, except asbestos that itself incurs direct physical loss or damage caused by a Defined Peril at the Insured Location.

e. The actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any Covered Cause of Loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to Insured Property arising out of seepage, contamination, or pollution caused by a Defined Peril at the Insured Location.

f. Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

g. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing damage.

j. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an Occurrence away from the Location(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

k. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

l.

i. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

ii. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

iii. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

This exclusion shall not apply to any ensuing physical damage, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

m. Error or omission in Electronic Data and Media machine programming or instructions, including, loss attributable to program design constraints, networking compatibility and original business applications.

n. The failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

   i. correctly recognizes any date as its true calendar date;

   ii. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

   iii. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command, which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

It is further understood that the Insurer will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in a. above.

Such Damage or Consequential Loss described in a., b., or c. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This exclusion shall not apply to any subsequent damage or consequential loss, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

o. Fungus, Mold(s), Mildew, Spores or Yeast; or any spores or toxins created or produced by or emanating from such Fungus, Mold(s), Mildew, Spores or Yeast.

p. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

q. Loss or damage arising out of:

   i. Building or any part of a building that is in danger of falling down or caving in,

ii. Any part of a building that has separated from another part of the building, or

iii. A building or any part of a building that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

However, the Company does cover loss or damage arising out of Collapse.

r. Equipment Breakdown to vehicles or any equipment on vehicles, draglines, or excavation or construction equipment.

s. Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in Section I. Subparagraph E.

2. The Company does not insure for loss or damage caused by any of the following:

a. Delay, loss of market, or loss of use.

b. Indirect, remote, or consequential loss or damage.

c. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

d. Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses, or any other similar act.

**SECTION III – INSURED PROPERTY**

A. INSURED PROPERTY: Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

1. Real property, including new buildings and additions under construction at an Insured Location, and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real property;

3. Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Personal property of others in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against under this Policy;

5. Contractor’s and vendor’s interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any time element coverage provided by this Policy.

B. PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

1. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2. Land, land values, any substance in or on Land, or any alteration to the natural condition of the Land;

3. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4. Standing timber, growing crops, plants, lawns, trees, shrubs, or animals;

5. Drainage systems, pavements or roadways;

6. Vehicles licensed for highway use, watercraft, aircraft, and railroad rolling stock;

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts, any mining equipment or mining property located below the surface of the ground;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft while on the launch pad, or after time of launch;

12. Dams, dikes, bridges, tunnels, reservoirs and canals;

13. Docks, piers and wharves;

14. Transmission and distribution lines of every type and description; except when located on the Insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire.

**SECTION IV – VALUATION**

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraph B. through M., inclusive, below: Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

B. Stock in process will be valued at the cost of raw materials and labor expended plus the proper proportion of overhead charges.

C. Finished goods manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. Raw materials, supplies and other merchandise not manufactured by the Insured will be valued at the replacement cost.

E. Valuable Papers and Records will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

F. Electronic Data and Media will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the value of the blank media.

G. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties, the replacement cost if replacement cost values have been reported to the Company and if actually replaced; otherwise the actual cash value with proper deduction for depreciation and obsolescence; [but not to exceed the cost to repair or replace the property with material of like kind and quality].

H. Leasehold improvements and betterments will be valued as follows;

1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments;

2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost:

   The Company will determine the proportionate value as follows:

   a. Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

   b. Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

   If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3. Nothing if others pay for repairs or replacement.

I. Fine Arts will be valued as follows:

1. If there is no Agreed Value on file with the Company, then the lesser of:

   a. The cost to repair or replace the fine art, or

   b. The appraised value which will be determined as of the time of the loss.

2. If there is an Agreed Value on file with the Company, then the Agreed Value on file with the Company.

J. Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1. Any collection expenses over and above the normal collection costs;

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K. Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1. The cost to repair or replace the damaged property, or

2. The price at which the property is offered for sale less the market value of the **Land**.

L. Property in Transit: In case of loss, the basis of adjustment shall be:

1. Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2. Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3. Property of others not under invoice shall be valued at the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

4. Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value applies.

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

**SECTION V – TIME ELEMENT COVERAGE**
**GROSS EARNINGS**

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

    a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

    b. For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

    c. Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

    a. normal operations resume, or

b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

a. To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

b. To replace physically damaged or destroyed mercantile stock necessary to resume operations.

c. To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

1. Required for restaffing or retraining employees, or

2. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above, or

3. Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C. ADDITIONAL TIME ELEMENT COVERAGES

1. EXTRA EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured. Extra Expense means:

a. The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b. The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2. RENTAL VALUE: As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

   Rental Value means the sum of:

   a. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

   b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

   c. The fair rental value of any portion of such property which is occupied by the Insured.

   Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3. ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party.

4. SOFT COSTS: For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during Period of Interruption (described in Section V., Paragraph B. above). Such Soft Costs must be attributable to the loss.

   The Company will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs means:

   a. The amount of actual interim or construction financing interest, including loan fees and other onetime charges incurred to negotiate a new construction loan and/or extend the existing one;

   b. Realty taxes and ground rent if any;

   c. Advertising and promotional expenses;

   d. Cost of additional commissions;

   e. Architects, surveyors, legal, consulting engineers, or other fees not otherwise covered under this Policy;

   f. Project administration expense, but not including development fees;

   g. Insurance premiums; and

   h. Finder's fee refunds.

5. CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

a. wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured, or

b. wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the COVERAGE TERRITORY.

6. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's real or personal property is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I., Subparagraph E.6. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.6.

7. INGRESS & EGRESS: This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I., Subparagraph E.17. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

8. EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a. the date on which the liability of the Company for loss or damage would otherwise terminate; or

b. the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in Section I., Subparagraph E.13. starting with later of a. or b. above. This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

With respect to Section V., Subparagraphs C.6. and C.7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Company will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D. ADDITIONAL EXCLUSIONS: Section V – Time Element Coverage does not cover:

1. IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

2. REMOTE LOSS –

   a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order,

   b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature, or

   c. Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises,

Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this Section V;

3. FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction;

4. TRANSIT - Any loss resulting from loss or damage to property in transit.

**SECTION VI – ADDITIONAL COVERAGES**

The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the Earth Movement, Flood, or Named Storm Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1. Any collection expenses over and above the normal collection costs.

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable

is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the Insured Locations of debris of Insured Property remaining as a result of direct physical loss or damage insured against under this Policy when the Insured gives written notice of such direct physical loss or damage to the Company, no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the Pollutant or Contaminant therein or thereon, whether or not the contamination results from an insured event.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay:

1. Under Demolition Coverage A: For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building;

2. Under Demolition Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

3. Under Demolition Coverage C: For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced;

The Company shall not be liable for any cost of demolition or increased cost of replacement, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

D. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to Electronic Data and Media.

E. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to;

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

   a. Include any Location of the Insured at the inception of the Policy; or

   b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly acquired location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values after a covered loss.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Company when discovered.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or Miscellaneous Unnamed Locations provisions of this Policy.

F. FINE ARTS: This Policy is extended to cover direct physical loss or damage to fine arts. However, no coverage is provided for:

1. Breakage of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture; antique jewelry or similar fragile articles, unless such breakage is caused by a Defined Peril at the Insured Location; or

2. Loss or damage as a result of restoring, repairing, or retouching processes.

G. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES: This Policy covers the following expenses resulting from a Covered Cause of Loss:

1. Fire brigade charges and any extinguishing expenses which the Insured incurs;

2. Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

H. LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an Insured Location. No sublimit of liability applies to this additional coverage, but in no event, will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

I. LEASEHOLD INTEREST: If Insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover The Interest of the Insured as Lessee or The Interest of the Insured as Lessor, whichever is applicable, but only for the first three months succeeding the date of the loss and the Net Lease Interest shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1. The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2. Improvements and betterments to real property which are not covered under any other section of this Policy; and

3. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions: The following terms, wherever used in this section shall mean:

1. The Interest of the Insured as Lessee is defined as:

    a. the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

    b. the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2. The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3. Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

J. LIMITED POLLUTION COVERAGE: This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of Pollutants or Contaminants from Land or water at an Insured Location when such Land or water is contaminated or polluted due to a Covered Cause of Loss at the Insured Location. There will be no coverage unless such expenses are reported to the Company within 180 days after the date of such Covered Cause of Loss.

K. NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy. Coverage under this additional coverage ceases at the earlier of the following dates:

1. Ninety (90) days from the date of acquisition or lease of such property or such other number of days shown in Section I for Newly Acquired Property, if applicable, or

2. When the newly acquired location is bound by the Company; or

3. The Company notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Miscellaneous Unnamed Locations provisions of this Policy.

L. PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

No sublimit of liability applies to this additional coverage.

M. PROFESSIONAL FEES: This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy. This Policy is extended to include reasonable and necessary fees charged by the Property Manager for handling the claim.

There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities. This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

N. PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any Location within the Coverage Territory when removed from the Insured Locations for the purpose of being repaired or serviced, excluding:

1. Personal property insured under another Policy or floater;
2. Personal property excluded under this Policy; or
3. Personal property removed from the Insured Locations for normal storage or processing or preparation for sale or delivery.

O. SERVICE INTERRUPTION: This Policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I., Subparagraph E.24. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines is restored.

The Sublimit set forth in Section I., Subparagraph E.24. applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption. None of the Additional Time Element Coverages set forth in Section V., Paragraph C. apply to the Time Element Coverage provided herein.

P. SPOILAGE: This Policy is extended to cover spoilage as a direct result of a Covered Cause of Loss. The Company shall be liable for direct physical loss or damage to:

1. Perishable goods due to spoilage; or

2. Perishable goods due to contamination from the release of refrigerant including, but not limited to, ammonia.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have applied. Otherwise payment will be determined in accordance with Section IV – Valuation of this Policy.

Perishable goods means personal property:

1. Maintained under controlled conditions for its preservation, and

2. Susceptible to loss or damage if the controlled conditions change.

Q. TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1. Personal property shipped to customers on F.O.B., C & F, or similar terms. The Insured's contingent interest in such shipments is admitted.

2. The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured.

3. Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage;

1. Samples in the custody of salespersons or selling agents.

2. Property insured under import or export ocean cargo policies.

3. Waterborne shipments via the Panama Canal or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

4. Shipments made by air unless via regularly scheduled airlines.

5. Property shipped by mail.

6. Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

7. Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

R. VALUABLE PAPERS AND RECORDS: This Policy is extended to cover Valuable Papers and Records.

**SECTION VII – CONDITIONS**

A. ABANDONMENT: There can be no abandonment to the Company of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy. Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

D. ASSIGNED ADJUSTER: It is hereby agreed that the following shall be designated as the ACCOUNT CLAIM ADJUSTER for all claims reported under this policy provided that he/she agrees to be subject to and fully comply with the Carrier (s) "Claim Handling Guidelines for Independent Adjusters Protocol". The ACCOUNT CLAIM ADJUSTER may not re-assign any claim(s) without the prior approval of the Company.

Carrier (s) reserves the right to associate a staff adjuster with the ACCOUNT CLAIM ADJUSTER as respects any claim or claims. Carrier (s) retains the right to terminate the below named ACCOUNT CLAIM ADJUSTER for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the company. In such event, or in the event that the below named ACCOUNT CLAIM ADJUSTER becomes unwilling or unable to perform, a replacement ACCOUNT CLAIM ADJUSTER will be selected by the mutual agreement of the Company and Named Insured.

Adjuster Name: NOT APPLICABLE

Adjusting Firm: NOT APPLICABLE

E. ASSIGNMENT: The Insured may not assign this Policy without the Company's prior written consent.

F. BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G. CANCELLATION:

1. This Policy can be canceled by the First Named Insured by providing the Company with:

   a. An advanced written request for cancellation stating when the cancellation shall be effective, and

   b. The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2. This Policy may be canceled by the Company by giving to the Insured at least SIXTY (60) days written notice of cancellation or in the case of non-payment of premium, at least ten (10) days' written notice of cancellation. Such notice may be accompanied with the unearned premium, or if not included, the Company shall return the unearned premium upon demand by the First Named Insured.

3. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. If this Policy is canceled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown on the Declarations. The cancellation will be effective even if the Company has not made or offered a refund.

H. CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I. CURRENCY: Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the country in which the property is located. However, if the risk is located in a country other than the United States or Canada, then the Limits of Liability, Deductibles and Premiums specified shall be in United States funds.

J. DIVISIBLE CONTRACT: Subject to Condition L., if the **Locations** described in this Policy include two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage occurring in any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K. INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

M. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

N. PROTECTION AND PRESERVATION OF PROPERTY:

In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the **Policy Limit**.

O. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

P. REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1. Give prompt written notice of any loss or damage to the Company,

2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3. Protect the property from further loss or damage,

4. Separate the damaged and undamaged personal property,

5. Maintain such property in the best possible order, and

6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,

7. Furnish all other documents or insurance policies that the Company may reasonably require,

8. Allow the Company to access and inspect any of the damaged or undamaged property, and

9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss,

2. The interest of the Insured and of all others in the property,

3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,

4. All other contracts of insurance, whether collectible or not, covering any of said property, and

5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

Q. REVIEW OF VALUES: The Insured shall provide this Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured **Locations**.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**. The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an Actual Cash Value basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Company. Receipt of said Statement of Values by this Company shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Company, or attached to this Policy.

R. SALVAGE AND RECOVERIES: All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

S. SERVICE OF SUIT: In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Carrier (s), or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this Policy of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

T. SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this Policy.

The Company shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention so to do within sixty (60) days after receipt of the proof of loss herein required.

U. SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;
2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

V. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twenty four (24) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

W. SUSPENSION: Upon the discovery of a dangerous condition with respect to **Equipment Breakdown** to any Insured Property under this Policy, any representative of the Company may immediately suspend the insurance against loss from an Accident to such property or part thereof by giving written notice mailed or delivered to the Insured at the address of the Insured as specified in Section I, or at the location of such property. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this Policy. The Insured shall be allowed the return of the unearned portion of the premium paid for such suspended insurance, pro-rata for the period of suspension.

X. TERRITORIAL LIMITATIONS: Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Y. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this form (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

Z. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that, fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when it does not contain adequate Insured Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

**SECTION VIII –POLICY DEFINITIONS**

A. Aircraft or Vehicle Impact means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

B. Collapse means an abrupt falling or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

C. Defined Peril means Fire; Lightning; Explosion; Windstorm; Hail; Smoke; Aircraft or Vehicle Impact; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Collapse (unless otherwise excluded under Section II – Perils Excluded, Subparagraph B.1.q.); or Leakage from Fire Protection Equipment.

D. Earth Movement means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;
2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, subsidence; and includes tsunami.

E. Earth Movement Counties: As referenced in this Policy, designated Earthquake Zones shall be defined as all Locations situated within the States or Counties as specified below;

1. Pacific Northwest Earthquake Zone Counties

   Washington: Clallum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom

2. New Madrid Earthquake Zone Counties

   Arkansas: Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett

   Illinois: Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St Clair, Washington, Clinton, Bond Madison, Jefferson

   Indiana: Posey, Vanderburgh, Gibson, Warrick, Pike

   Kentucky: Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway

   Mississippi: Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar

   Missouri: Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St Francois, St Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne,, Reynolds, Madison, St Genevieve and Perry

   Tennessee: Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman

F. Electronic Data and Media means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

G. Equipment Breakdown means direct physical damage to Insured Property that is the direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Insured Property. The event must be one of the following:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment

H. Explosion: Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured;

1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3. Combustion gas turbines;

4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will include loss or damage arising or resulting from;

1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition;

1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2. Bursting or rupture caused by freezing;

3. Sonic shock waves, generally known as Sonic Boom;

4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

I. Fine Arts means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

Fine Arts does not mean and does not include any item which would qualify as Valuable Papers and Records.

J. Flood means, whether natural or manmade, Flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a Flood.

K. Fungus, Mold(S), Mildew, Spores or Yeast:

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

L. Land means land except land for which values are reported and premiums are charged hereunder, such as dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such surface containment structures.

M. Leakage from Fire Protection Equipment means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the Fire Protection Equipment for the Insured Location or for any adjoining Locations;

2. Collapse or fall of tanks forming a part of the Fire Protection Equipment or the component parts or supports of such tanks.

The term Fire Protection Equipment includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include;

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the Insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

N. Location means the location as specified in the Statement of Values, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear Land space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

O. Miscellaneous Unnamed Location(s) means a location that has not been included in the Statement of Values on file with the Company and has not been reported to the Company as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

P. Occurrence means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period.

If more than one event for Windstorm, Hail, Named Storm, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single Occurrence. When filing proof of loss, the Insured may elect the moment at which the 72-hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

Q. Pollutants or Contaminants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

R. Riot, Strike or Civil Commotion means riot and civil commotion including;

1. Acts of striking employees while occupying the Insured Location; and
2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

S. Smoke means loss or damage ensuing from a sudden and accidental release of Smoke. The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

T. Valuable Papers and Records means documents that are written, printed, or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;
2. Legal and financial agreements such as deeds and mortgages;
3. Addressograph plates; and
4. Any electrically produced data such as printouts, punched cards, tapes or discs.

Valuable Papers and Records does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

Valuable Papers and Records does not mean and does not include any item which would qualify as Fine Arts.

U. Vandalism and Malicious Mischief means willful and malicious damage to, or destruction of, Insured Property. Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

V. Windstorm or Hail: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

| Named Insured | | Endorsement Number |
|---|---|---|
| The School Board of Volusia Co | | A |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF637823-21 | 05/01/2021 to 05/01/2022 | 05/01/2021 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 05/01/2021 |

**This endorsement changes the policy. Please read it carefully.**

## MINIMUM EARNED PREMIUM CLAUSE - PERCENTAGE

In the event of cancellation of this policy by the Insured, a minimum earned premium of 35% of the original policy premium shall become earned; any conditions of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel. In the event if such cancellation by the Company for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the Insured remits the full premium due within 10 days of receiving it.

In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum premium.

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| B | 12:01 a.m. on 05/01/2021 | EAF637823-21 | Included |

**COVERED LOCATIONS ENDORSEMENT**

In consideration of the premium charged, it is agreed that the following is added to the policy:

**Additional Locations**

| |
|---|
| Coverage for Support Vehicles & School Buses is for when parked at |
| Scheduled school locations ONLY: NO OVER THE ROAD OR COLLISION |
| COVERAGE. |

All other provisions of the Policy remain unchanged.

| Named Insured | | Endorsement Number |
|---|---|---|
| The School Board of Volusia Co | | C |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF637823-21 | 05/01/2021 to 05/01/2022 | 05/01/2021 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 05/01/2021 |

**This endorsement changes the policy. Please read it carefully.**

## COMMERCIAL PROPERTY EXCLUSION ENDORSEMENT

1. EXCLUSIONS

A. POLLUTANTS AND CONTAMINANTS EXCLUSION

1) As used in this endorsement, Pollutants or Contaminants means:

a. Any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

b. Pollutants or contaminants include, but are not limited to those materials that can cause or threaten damage to human health or human welfare or cause or threaten damage, deterioration, loss of value, marketability or loss of use to property. Pollutants or contaminants include, but are not limited to bacteria, fungi, mold, mildew, virus or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency or any other governing authority.

2) This policy does not cover any of the following.

a. Loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of pollutants or contaminants, however caused;

b. The expense or cost to extract or remove pollutants or contaminants from debris;

c. The expense or cost to extract or remove pollutants or contaminants from land or water;

d. The expense or cost to extract or remove, restore or replace contaminated or polluted land or water;

e. The costs associated with the enforcement or any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants or contaminants;

f. Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by pollutants or contaminants, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters;

g. Any cost to store or otherwise dispose of any property because pollutants or contaminants infect the property; or

h. Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

3) Additional Coverage

This policy is extended to cover the necessary and reasonable expenses actually incurred by the insured to clean up or remove pollutants from land or water at Covered Locations under this policy during the policy period if the discharge, dispersal, seepage, migration, release or escape of the pollutants is directly caused by or results directly from fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system. The most the Company will pay for such pollutant clean up or removal is a $10,000 aggregate in any one policy year. The expenses will be paid only if they are reported to the Company in writing within 180 days of the date on which the covered loss occurs. This additional coverage does not increase the Policy Limit of Insurance.

B. ASBESTOS, DIOXIN OR POLYCHLORINATED BIPHENOLS MATERIALS EXCLUSION

1) In this exclusion, Asbestos, Dioxin, and Polychlorinated Biphenols are all referred to as "Materials."

2) This policy does not cover loss or damage caused directly or indirectly by any of the following:

a. Removal of such "Materials" from any goods, products, structures or debris;

b. Demolition, increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such "Materials";

c. Any governmental direction or request declaring that such "Materials" present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; or

d. Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

3) Additional Coverage

This policy is extended to cover the necessary and reasonable expenses actually incurred by the Insured to remove Asbestos at Covered Locations under this policy during the policy period if Asbestos itself is directly damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system. The most the Company will pay for such Asbestos removal is a $10,000 aggregate in any one policy year.

The expenses will be paid only if they are reported to the Company in writing within 180 days of the date on which the covered loss occurs. This additional coverage does not increase the Policy Limit of Insurance.

C. NUCLEAR EXCLUSION CLAUSE

1) The Company shall not be liable for loss or damage by nuclear reaction, nuclear radiation or radioactive contamination, however caused.

2) This policy will not cover any cost or expense to defend any claim or suit or pay any damages, loss or expense or obligation, resulting from nuclear reaction, nuclear radiation or radioactive contamination, however caused.

D. FINES OR PENALTIES

This policy will not pay any costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

2. OTHER INSURANCE CONTRACTS

Coverage provided by other insurance contract(s) for any exclusion in this endorsement shall not affect the terms and conditions as set forth by this endorsement. This policy shall not cover as excess insurance or contribute with such other insurance for loss or damage excluded by this endorsement.

The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy. All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.

| **Named Insured** | | **Endorsement Number** |
|---|---|---|
| The School Board of Volusia Co | | D |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF637823-21 | 05/01/2021 to 05/01/2022 | 05/01/2021 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 05/01/2021 |

**This endorsement changes the policy. Please read it carefully.**

## TOTAL EXCLUSION – ELECTRONIC PROPERTY AND VIRUS

This endorsement modifies insurance provided under all Coverage Parts.

A. It is agreed the following is not Covered Property:

Electronic Data

Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

B. It is agreed the following are not Covered Causes of Loss:

1. Virus – A virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

2. Computer Manipulation – Loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by any entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

C. The following item is added as an EXCLUSION:

COST TO REPLACE ELECTRONIC DATA **—** The cost to replace or restore information which exists as electronic data.

D. The following is added to the Business Income (and Extra Expense) Coverage Form, if it applies:

ADDITIONAL LIMITATION – Interruption of Computer Operations

Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data.

Coverage of Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data.

| **Named Insured** | | **Endorsement Number** |
|---|---|---|
| The School Board of Volusia Co | | E |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF637823-21 | 05/01/2021 to 05/01/2022 | 05/01/2021 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 05/01/2021 |

**This endorsement changes the policy. Please read it carefully.**

## NUCLEAR, CHEMICAL AND BIOLOGICAL EXCLUSION ENDORSEMENT

The following exclusions are added to your Policy.

This insurance does not apply to:

A. Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B. Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical or biological materials or agents that are harmful to property or human health, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such dispersal, application, release or exposure may have been caused.

C. This exclusion applies to all coverage under the Policy notwithstanding any coverage extension or any other endorsement.

| Endorsement No. | Effective Date of Endorsement | Policy Number | Additional Premium |
|---|---|---|---|
| F | 12:01 a.m. on 05/01/2021<br>If the above date is blank, then this endorsement is effective on the effective date of the Policy. | EAF637823-21 | Included |

**CANCELLATION AND NONRENEWAL ENDORSEMENT – FLORIDA**

It is agreed that:

Any Cancellation or Nonrenewal provision in this policy is replaced by the following. If the policy does not contain a Cancellation and/or Nonrenewal provision, the following is added to the policy:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance notice of cancellation. Such advance notice of cancellation should be mailed or delivered to the address indicated in the Declarations under the item entitled Notices to Insurer.

2. Cancellation Of Policies In Effect

   a. For 90 Days Or Less

      If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 45 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

         (a) A material misstatement or misrepresentation; or

         (b) A failure to comply with the underwriting requirements established by the insurer.

   b. For More Than 90 Days

      If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

      (1) Nonpayment of premium;

      (2) The policy was obtained by a material misstatement;

      (3) Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

      (4) A substantial change in the risk covered by the policy; or

      (5) The cancellation is for all insureds under such policies for a given class of insureds.

      If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph 2.b.

c. Notwithstanding the above provisions, if this policy provides coverage for an Insured's commercial residential property, if we cancel this policy for any of the reasons in 2.b., we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 120 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph 2.b.

3. We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

4. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

   The cancellation will be effective even if we have not made or offered a refund.

5. Nonrenewal

   a. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

   b. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

6. If notice of cancellation is mailed, proof of mailing shall be considered sufficient proof of notice.

As used herein, "us" and "we" refers to the insurance company named on the Declarations.

As used herein, "you", "your" or "named insured" refers to the person or entity first named as such on the Declarations.

If any provision of the policy contains cancellation or nonrenewal terms that are more favorable to the insured than those provided in this endorsement, then, except where prohibited by applicable state law, the more favorable terms control.

All other provisions of the policy remain unchanged.

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| G | 12:01 a.m. on 05/01/2021 | EAF637823-21 | Included |

**NOTICE OF CANCELLATION CHANGE ENDORSEMENT**

It is agreed that, notwithstanding any provisions to the contrary in this policy, the Insurer agrees to provide the required written notice of cancellation at least 90 days before the effective date of cancellation or the number of days required by applicable state law, whichever is greater, if it cancels the policy for a reason other than nonpayment of premium.

All other provisions of the policy remain unchanged.

AXIS PROPERTY INSURANCE

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| H | 12:01 a.m. on 05/01/2021 | EAF637823-21 | Included |

## EXCLUSION OF LOSS OR DAMAGE DUE TO VIRUS OR BACTERIA

It is agreed that the following exclusion shall be added to the policy:

**Virus or Bacteria Exclusion**

We will not pay for loss or damage to covered property caused by, arising out of or resulting from, contributed to or made worse by, actual, alleged or suspected presence of any virus, bacterium or microorganism that induces or is capable of inducing physical distress, illness or disease. Nor will we pay:

1. The expense or cost to extract or remove such a virus, bacterium or microorganism from covered property;
2. The costs associated with the enforcement of any ordinance or law which requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of such a virus, bacterium or microorganism;
3. The expense or costs associated with the enforcement of or compliance with of any ordinance or law which requires the total or partial, temporary or permanent, interruption, closure or cessation of business;
4. Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by such a virus, bacterium or microorganism, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters; or
5. Any cost to store or otherwise dispose of any property because of the presence of such a virus, bacterium or microorganism in or on covered property.

This exclusion applies to all coverage under all forms and endorsements that comprise this coverage part or policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

With respect to loss or damage subject to this exclusion, the terms of this exclusion shall supersede any exclusion pertaining to pollutants.

As used in this endorsement:

The term “we” means the company providing this insurance.

The term “covered property” shall have the same meaning as set forth in the policy and shall have the same meaning as the term “insured property” (wherever such term is used in policy).

The terms of this exclusion, or the inapplicability of this exclusion to any particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this coverage part or policy.

All other provisions of the Policy remain unchanged.

Includes copyrighted material of Insurance Service Office Inc., with its permission.

| Named Insured | | Endorsement Number |
|---|---|---|
| The School Board of Volusia Co | | I |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EAF637823-21 | 05/01/2021 to 05/01/2022 | 05/01/2021 |
| **Issued By** | | **Endorsement Issue Date** |
| AXIS Surplus Insurance Company | | 05/01/2021 |

**This endorsement changes the policy. Please read it carefully.**

**TERRORISM EXCLUSION ENDORSEMENT**

A. The following exclusion is added:

Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost or legal obligation directly or indirectly resulting from or arising out of or in any way related to any:

1. "Terrorism Act"; or

2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Terrorism Act."

This exclusion applies regardless of any other cause or event that in any way contributes concurrently or in any sequence to the loss, damage, injury, expense, cost or legal obligation.

This exclusion applies whether or not the "Terrorism Act" was committed in concert with or on behalf of any organization or government.

B. As used in this endorsement:

"Terrorism Act" means any act, preparation in respect of action or the threat of action that:

1. Involves violence or is dangerous to human life or tangible or intangible property (including electronic, communications, information or mechanical systems or infrastructure), and

2. Reasonably appears to be intended, in whole or in part, to:

a. Intimidate or coerce a civilian population or any segment of a civilian population; or
b. Disrupt any segment of the economy of one or more nations; or
c. Overthrow or influence the policy or conduct of a government; or
d. Respond to any governmental action or policy.

"Terrorism Act" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

"Terrorism Act" includes the intentional dispersal or application of pathogenic, or poisonous biological or chemical materials and shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this policy.

# SERVICE OF SUIT

# FLORIDA

The Company hereby designates the Chief Financial Officer of the Florida Office of Financial Regulation and his or her successors, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or by any beneficiary under this Policy against the Company arising out of this Policy, provided that all lawful process received by said Chief Financial Officer or his or her successors, is sent by certified or registered mail to the Company at:

**AXIS U.S. Insurance**

**Attn: Claims Administrator**

**10000 Avalon Blvd.**

**Suite 200**

**Alpharetta, GA 30009**

Service of process in any such action will also be valid if served upon any person in the State of Florida who, on behalf of the Company, solicits insurance within the State of Florida; makes, issues or delivers insurance policies within the State of Florida; or collects or receives any premiums or other consideration for the Company.

Service of process shall be deemed to be proper and lawful when in compliance with Florida Statutes, Surplus Lines Law, Section 626.907.

# SIGNATURE PAGE

IN WITNESS WHEREOF, the Insurer has caused this policy to be issued by affixing hereto the facsimile signatures of its President and Secretary.

Secretary | President

Andrew Weissert, Secretary | Carlton Maner, President

## CLAIM NOTICE

To report a new claim notice/loss, please notify:

### AXIS U.S. INSURANCE

During business hours of 8:30 AM EST to 4:30 PM EST.

**Mailing Address**
PO Box 4470
Alpharetta, GA 30023

**Shipping Address**
10000 Avalon Blvd
Suite 200
Alpharetta, GA 30009

**Phone:** (678) 746-9400
**Fax:** (678) 746-9315
**Toll Free Fax:** (866) 770-5629
**E-mail:** USClaimNoticeATL@axiscapital.com

**After business hours**
Please contact Cunningham Lindsey at 1-800-621-5410.

**ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.**
199 Water Street, 24th Floor, New York, NY 10038 · Tel. (646) 794-0500 · Fax (646) 794-0611
(hereinafter called the Company)

---

**COMMERCIAL PROPERTY POLICY**
**DECLARATIONS**

**POLICY NUMBER:** 0312-8587-1A **RENEWAL OF:** 0312-8587-1A

**ITEM 1.**
**Named Insured:** School Board of Volusia County

**Address:** PO Box 2118, Deland, FL 32721

**ITEM 2. Policy Period:**
**From:** 05/01/2024 **To:** 05/01/2025

**at 12:01 A.M. Standard Time at the location of property insured as stated in the Schedule of Locations.**

**ITEM 3. Limit of Liability:** 25% being $2,500,000 Part of $10,000,000 Primary per Occurrence, Except Annual Aggregate applies, as respects Perils of Flood, if Covered; and Annual Aggregate applies, as respects Perils of Earth Movement, if Covered

**See attached Forms and Endorsements, for Sublimits which may apply to these or to other Perils or Coverages.**

| | |
|---|---|
| **Premium, all Coverages Excluding Terrorism:** | $650,000 part of $2,600,000. |
| **Premium, Terrorism Coverage:** | REJECTED |
| **Total Premium, All Coverages:** | $650,000 part of $2,600,000. |

In the event of cancellation of this policy by the Insured, a minimum premium of $227,500 shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium within 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not affect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

**ITEM 4. Perils:** All Risk of Direct Physical Loss or Damage Including Flood and Earth Movement; Excluding Terrorism, Boiler & Machinery, Communicable Disease and Cyber

**ITEM 5. Description of Property Covered:** Real And Personal Property, Business Interruption, Extra Expenses, Rental Values, Contingent Business Interruption

**ITEM 6. Coinsurance:** NIL

**ITEM 7. Forms Attached:** See attached Forms Schedule

**ITEM 8. Producer:** MacDuff Underwriters, Inc.
300 N Beach St Suite 120
Daytona Beach, FL 32114

**ITEM 9. SERVICE OF SUIT CLAUSE**
Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 1690 New Britain Ave., Suite 101, Farmington, CT 06032, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**ITEM 10. GOVERNMENT ACTIVITY CLAUSE**
The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS HEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in these Declarations by one of our duly authorized representatives.

**Authorized Representative**

ANY REFERENCE IN THE POLICY FORM TO CONTACT IN WRITING THE COMPANY'S CLAIM OR LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.

Allied World Assurance Company (U.S.), Inc.
ATTN: Claim Department
1690 New Britain Ave., Suite 101
Farmington, CT 060323
awacus.propertyclaims@awac.com

Allied World Assurance Company (U.S.), Inc.
ATTN: Legal Department
199 Water Street, 24th Fl.
New York, New York 10038

ALL OTHER NOTICES SHOULD BE SENT TO THE ADDRESS PROVIDED BELOW:
Allied World Assurance Company (U.S.), Inc.
199 Water Street, 24th Fl.
New York, NY 10038

**FORMS SCHEDULE**

**Named Insured:** School Board of Volusia County

**Policy No:** 0312-8587-1A **Effective Date:** 05/01/2024

| Form No: | Edition Date | Endorsement No: | Title |
|---|---|---|---|
| PDP 0001 | (04/21) | | Declarations Page |
| PSC 0007 99 | (03/21) | | Schedule of Covered Locations |
| CP 00244 00 | (08/22) | | Standard Property Conditions |
| | | | Broker Form |
| CP 00243 00 | (08/22) | | Trade and Economic Sanctions |
| PEN 0012 99 | (03/21) | | Property Millennium Endorsement |
| PEN 0013 99 | (03/21) | | War Risk and Terrorist Exclusion |
| PEN 0014 99 | (03/21) | | Pollution, Contamination, Debris Removal Exclusion Endorsement |
| PEN 0015A 99 | (03/21) | | Mold / Fungus Exclusion |
| PEN 0016A 99 | (03/21) | | Data Corruption Endorsement |
| PEN 0017 99 | (03/21) | | Special Catastrophe Earned Premium Provision Endorsement |
| PEN 0104 99 | (03/21) | | Cyber Exclusion |
| PEN 0111 99 | (03/21) | | Communicable Disease Exclusion |
| PEN 0700 | (03/21) | | Policy Holder Disclosure Statement under Terrorism Insurance Risk Act - Blank |

**SCHEDULE OF COVERED LOCATIONS**

**Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

| **Description of Premises** | **Limit** | **Percent of Coinsurance** |
|---|---|---|
| As Per Schedule of Locations on File With the Company, with a Total Insurable Value of $1,695,421,068 | 25% being $2,500,000 Part of $10,000,000 Primary per Occurrence, Except Annual Aggregate applies, as respects Perils of Flood, if Covered; and Annual Aggregate applies, as respects Perils of Earth Movement, if Covered | Nil |

**ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.**
**Standard Property Conditions – Broad Form**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

In consideration of the premium charged, the following clauses are hereby made applicable under this Policy.

**MINIMUM EARNED PREMIUM CLAUSE**

In the event of cancellation of this Policy by the Insured, a minimum premium of $227,500., shall become earned, any provision of the Policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full Policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

**POLICY DEDUCTIBLE**

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of *** shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this Policy shall be as follows:

*** See pages 3 to 5 of the Coverage Form

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

**CANCELLATION CLAUSE**

Except and to the extent of the Minimum Earned Premium Clause which is part of this Policy, this clause supersedes other cancellation clauses made a part of this Policy.

CANCELLATION: This Policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this Policy or last known address, written notice, stating when, not less than 90 days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

**SERVICE OF SUIT CLAUSE**

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 199 Water Street, 24th Fl., New York, NY 10038, or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this Policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy. If the peril of fire is insured under this Policy, then, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

## REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the Policy limit of liability.

## PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at 1690 New Britain Ave., Suite 101, Farmington, CT 06032.

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this Policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS HEREOF, we have caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned in the Declarations by one of our duly authorized representatives.

**MANUSCRIPT DOMESTIC PROPERTY POLICY**

**SECTION I – COVERAGES AND LIMITS OF LIABILITY**

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A. NAMED INSURED: First Named Insured and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

B. MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS: Per Certificates on File with the Company.

C. COVERAGE TERRITORY: Coverage under this Policy applies to **Occurrences** within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

D. LIMIT OF LIABILITY ("Policy Limit"): This Company's maximum liability in any one Occurrence as a result of all covered loss or damage regardless of the number of Locations, coverages, or perils insured under this Policy shall not exceed:

**Participation - $2,500,000 Part of $10,000,000 Primary**

E. SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are subject to and not in addition to the **Policy Limit** shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence** unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.**

1. Earth Movement:

a. $ 25,000,000 Annual Aggregate

Subject to the Annual Aggregate Limit for all Earth Movement shown in Subparagraph E.1.a. above:

b. NOT COVERED Annual Aggregate for all Earth Movement in all of the following states combined: California, Alaska, Hawaii, and Puerto Rico

c. NOT COVERED Annual Aggregate for Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.)

d. NOT COVERED Annual Aggregate for New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.)

2. Flood:

a. $ 25,000,000 — Annual Aggregate

b. $ 25,000,000 — Subject to the Annual Aggregate Limit for all Flood shown in Subparagraph E.2.a. above, the Annual Aggregate as respects Flood for Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

3. Named Storm: $25,000,000 Regardless of the number of Coverages, Locations or Perils involved including, but not limited to, all Flood (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain, the maximum amount the Company will pay per Occurrence as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression). In the event covered Loss or Damage by Flood arises out of a Named Storm, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Flood shall be the Sublimits of Liability for Flood as shown in Subparagraphs E.2.a. and E.2.b. above. However, if Flood is not covered, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Named Storm shall exclude Loss or Damage by Flood.

4. Debris Removal: The Company's total liability for Debris Removal per Occurrence for all Insured Locations sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

a. 25 % of the amount of covered direct physical loss or damage payable for all Insured Locations; or

b. $ 1,000,000

5. Accounts Receivable: $ 250,000

6. Civil or Military Authority: 30 Days, but in no event will the Company pay more than $ NOT APPLICABLE

7. Contingent Time Element: $ 1,000,000

8. Demolition & Increased Cost of Construction: (See Section VI – Additional Coverages, Paragraph C.)

a. Demolition Coverage A: INCLUDED
b. Demolition Coverage B: $5,000,000
c. Demolition Coverage C: $5,000,000

9. Electronic Data and Media: $ 250,000

10. Equipment Breakdown: $ NOT COVERED

11. Spoilage: $ 250,000

12. Errors and Omissions: $ 100,000, Subject to all other sublimits contained herein.

13. Extended Period of Indemnity: 180 Days

14. Extra Expense: $ 10,000,000

15. Fine Arts: $ 1,000,000

16. Fire Brigade Charges: $ 2,500

17. Ingress/Egress Coverage: 30 Days, but in no event will the Company pay more than $ 2,500,000

18. Leasehold Interest: $ 1,000,000

19. Limited Pollution Coverage: $ 50,000 Annual Aggregate

20. Miscellaneous Unnamed Locations: $ 5,000,000, Subject to all other sublimits contained herein.

21. Newly Acquired Property: 90 Days, but in no event will the Company pay more than $ 1,000,000 Subject to all other sublimits contained herein.

22. Ordinary Payroll: NOT COVERED Days

23. Professional Fees: $ 1,000,000

24. Service Interruption: $10,000,000. Insured physical loss or damage must occur within One (1) state mile from the insured's premises for coverage to apply. A qualifying period of 24 hours applies to this coverage.

25. Transit: $100,000, but no more than $25,000 per Conveyance

26. Valuable Papers and Records: $ 1,000,000

F. MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s),

2. The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

G. DEDUCTIBLE: Each claim for loss or damage under this policy shall be subject to a per occurrence deductible amount of $100,000, except $25,000 for Automobile Physical Damage & Inland Marine, unless a specific deductible shown below applies:

1. Flood:

   a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.1.b.:

   b. 5% of Total Insurable Values (TIV) at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ 500,000 any one Occurrence as respects Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

2. Earth Movement:

   a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.2.b, G.2.c., or G.2.d.:

   b. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in California, Hawaii, Alaska, and Puerto Rico;

   c. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.);

   d. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.

3. Windstorm or Hail:

   a. $ 100,000 Per Occurrence, except as follows:

   b. 5% of Total Insurable Values (TIV) "Per Building" at the time of the loss at each location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression), regardless of the number of Coverages, Locations, or Perils involved (including but not limited to, all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum of $500,000 any one occurrence;

4. Time Element: NOT APPLICABLE Days

The following two paragraphs apply to Subparagraphs G.1. through G.4, inclusive:

In each case of loss or damage covered by this Policy, the Company shall not be liable unless the Insured sustains loss or damage in a single Occurrence greater than any applicable deductible described herein and then, if this is a quota share Policy, only for the Company's share in excess of such deductible. When this Policy covers more than one Location, the deductible shall apply against the total loss or damage covered by this Policy in any one Occurrence, unless otherwise stated in this Paragraph G.

If two or more deductible amounts provided in this Policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in this Policy. However, if:

1. The Time Element deductible and another deductible apply to a single **Occurrence**, then the Company shall apply both deductibles to the **Occurrence**; and

2. Covered Loss or Damage by **Flood** arises out of a Named Storm, then the Company shall apply the **Flood** deductible set forth in Subparagraph G.1. or the Named Storm deductible set forth in Subparagraph G.3.b., whichever is greater.

**SECTION II – COVERED CAUSES OF LOSS**

A. PERILS INSURED: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a Covered Cause of Loss. However:

      i. If fire not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

      ii. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

         (1) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

         (2) By military, naval, or air forces; or

         (3) By an agent of any such government, power, authority, or force;

      ii. Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

      iii. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

   Including any consequence of Subparagraphs b.i., b.ii., or b.iii. above.

c. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured, or others listed above without the knowledge of the Insured is covered.

d. Asbestos material removal, except asbestos that itself incurs direct physical loss or damage caused by a Defined Peril at the Insured Location.

e. The actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any Covered Cause of Loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to Insured Property arising out of seepage, contamination, or pollution caused by a Defined Peril at the Insured Location.

f. Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

g. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing damage.

j. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an Occurrence away from the Location(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

k. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

l.

i. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

ii. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

iii. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

This exclusion shall not apply to any ensuing physical damage, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

m. Error or omission in Electronic Data and Media machine programming or instructions, including, loss attributable to program design constraints, networking compatibility and original business applications.

n. The failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

i. correctly recognizes any date as its true calendar date;

ii. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

iii. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command, which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

It is further understood that the Insurer will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in a. above.

Such Damage or Consequential Loss described in a., b., or c. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This exclusion shall not apply to any subsequent damage or consequential loss, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

o. Fungus, Mold(s), Mildew, Spores or Yeast; or any spores or toxins created or produced by or emanating from such Fungus, Mold(s), Mildew, Spores or Yeast.

p. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

q. Loss or damage arising out of:

i. Building or any part of a building that is in danger of falling down or caving in,

ii. Any part of a building that has separated from another part of the building, or

iii. A building or any part of a building that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

However, the Company does cover loss or damage arising out of Collapse.

r. Equipment Breakdown to vehicles or any equipment on vehicles, draglines, or excavation or construction equipment.

s. Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in Section I. Subparagraph E.

2. The Company does not insure for loss or damage caused by any of the following:

a. Delay, loss of market, or loss of use.

b. Indirect, remote, or consequential loss or damage.

c. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

d. Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses, or any other similar act.

**SECTION III – INSURED PROPERTY**

A. INSURED PROPERTY: Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

1. Real property, including new buildings and additions under construction at an Insured Location, and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real property;

3. Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Personal property of others in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against under this Policy;

5. Contractor’s and vendor’s interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any time element coverage provided by this Policy.

B. PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

1. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2. Land, land values, any substance in or on Land, or any alteration to the natural condition of the Land;

3. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4. Standing timber, growing crops, plants, lawns, trees, shrubs, or animals;

5. Drainage systems, pavements or roadways;

6. Vehicles licensed for highway use, watercraft, aircraft, and railroad rolling stock;

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts, any mining equipment or mining property located below the surface of the ground;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft while on the launch pad, or after time of launch;

12. Dams, dikes, bridges, tunnels, reservoirs and canals;

13. Docks, piers and wharves;

14. Transmission and distribution lines of every type and description; except when located on the Insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire.

**SECTION IV – VALUATION**

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraph B. through M., inclusive, below: Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

B. Stock in process will be valued at the cost of raw materials and labor expended plus the proper proportion of overhead charges.

C. Finished goods manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. Raw materials, supplies and other merchandise not manufactured by the Insured will be valued at the replacement cost.

E. Valuable Papers and Records will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

F. Electronic Data and Media will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the value of the blank media.

G. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties, the replacement cost if replacement cost values have been reported to the Company and if actually replaced; otherwise the actual cash value with proper deduction for depreciation and obsolescence; [but not to exceed the cost to repair or replace the property with material of like kind and quality].

H. Leasehold improvements and betterments will be valued as follows;

1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments;

2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost:

   The Company will determine the proportionate value as follows:

   a. Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

   b. Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

   If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3. Nothing if others pay for repairs or replacement.

I. Fine Arts will be valued as follows:

1. If there is no Agreed Value on file with the Company, then the lesser of:

   a. The cost to repair or replace the fine art, or

   b. The appraised value which will be determined as of the time of the loss.

2. If there is an Agreed Value on file with the Company, then the Agreed Value on file with the Company.

J. Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1. Any collection expenses over and above the normal collection costs;

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K. Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1. The cost to repair or replace the damaged property, or

2. The price at which the property is offered for sale less the market value of the **Land**.

L. Property in Transit: In case of loss, the basis of adjustment shall be:

1. Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2. Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3. Property of others not under invoice shall be valued at the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

4. Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value applies.

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

**SECTION V – TIME ELEMENT COVERAGE**
**GROSS EARNINGS**

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

   a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

   b. For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

   c. Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

   a. normal operations resume, or

b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

   a. To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

   b. To replace physically damaged or destroyed mercantile stock necessary to resume operations.

   c. To replace raw materials and supplies in order to continue operations.

   However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

1. Required for restaffing or retraining employees, or

2. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above, or

3. Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C. ADDITIONAL TIME ELEMENT COVERAGES

1. EXTRA EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured. Extra Expense means:

   a. The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

   b. The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2. RENTAL VALUE: As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

   Rental Value means the sum of:

   a. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

   b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

   c. The fair rental value of any portion of such property which is occupied by the Insured.

   Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3. ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party.

4. SOFT COSTS: For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during Period of Interruption (described in Section V., Paragraph B. above). Such Soft Costs must be attributable to the loss.

   The Company will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs means:

   a. The amount of actual interim or construction financing interest, including loan fees and other onetime charges incurred to negotiate a new construction loan and/or extend the existing one;

   b. Realty taxes and ground rent if any;

   c. Advertising and promotional expenses;

   d. Cost of additional commissions;

   e. Architects, surveyors, legal, consulting engineers, or other fees not otherwise covered under this Policy;

   f. Project administration expense, but not including development fees;

   g. Insurance premiums; and

   h. Finder's fee refunds.

5. CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

a. wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured, or

b. wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the COVERAGE TERRITORY.

6. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's real or personal property is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I., Subparagraph E.6. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.6.

7. INGRESS & EGRESS: This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I., Subparagraph E.17. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

8. EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a. the date on which the liability of the Company for loss or damage would otherwise terminate; or

b. the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in Section I., Subparagraph E.13. starting with later of a. or b. above. This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

With respect to Section V., Subparagraphs C.6. and C.7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Company will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D. ADDITIONAL EXCLUSIONS: Section V – Time Element Coverage does not cover:

1. IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

2. REMOTE LOSS –

   a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order,

   b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature, or

   c. Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises,

Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this Section V;

3. FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction;

4. TRANSIT - Any loss resulting from loss or damage to property in transit.

**SECTION VI – ADDITIONAL COVERAGES**

The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the Earth Movement, Flood, or Named Storm Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1. Any collection expenses over and above the normal collection costs.

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable

is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the Insured Locations of debris of Insured Property remaining as a result of direct physical loss or damage insured against under this Policy when the Insured gives written notice of such direct physical loss or damage to the Company, no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the Pollutant or Contaminant therein or thereon, whether or not the contamination results from an insured event.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay:

1. Under Demolition Coverage A: For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building;

2. Under Demolition Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

3. Under Demolition Coverage C: For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced;

The Company shall not be liable for any cost of demolition or increased cost of replacement, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

D. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to Electronic Data and Media.

E. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to;

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

   a. Include any Location of the Insured at the inception of the Policy; or

   b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly acquired location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values after a covered loss.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Company when discovered.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or Miscellaneous Unnamed Locations provisions of this Policy.

F. FINE ARTS: This Policy is extended to cover direct physical loss or damage to fine arts. However, no coverage is provided for:

1. Breakage of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture; antique jewelry or similar fragile articles, unless such breakage is caused by a Defined Peril at the Insured Location; or

2. Loss or damage as a result of restoring, repairing, or retouching processes.

G. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES: This Policy covers the following expenses resulting from a Covered Cause of Loss:

1. Fire brigade charges and any extinguishing expenses which the Insured incurs;

2. Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

H. LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an Insured Location. No sublimit of liability applies to this additional coverage, but in no event, will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

I. LEASEHOLD INTEREST: If Insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover The Interest of the Insured as Lessee or The Interest of the Insured as Lessor, whichever is applicable, but only for the first three months succeeding the date of the loss and the Net Lease Interest shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1. The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2. Improvements and betterments to real property which are not covered under any other section of this Policy; and

3. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions: The following terms, wherever used in this section shall mean:

1. The Interest of the Insured as Lessee is defined as:

   a. the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

   b. the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2. The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3. Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

J. LIMITED POLLUTION COVERAGE: This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of Pollutants or Contaminants from Land or water at an Insured Location when such Land or water is contaminated or polluted due to a Covered Cause of Loss at the Insured Location. There will be no coverage unless such expenses are reported to the Company within 180 days after the date of such Covered Cause of Loss.

K. NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy. Coverage under this additional coverage ceases at the earlier of the following dates:

1. Ninety (90) days from the date of acquisition or lease of such property or such other number of days shown in Section I for Newly Acquired Property, if applicable, or

2. When the newly acquired location is bound by the Company; or

3. The Company notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Miscellaneous Unnamed Locations provisions of this Policy.

L. PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

No sublimit of liability applies to this additional coverage.

M. PROFESSIONAL FEES: This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy. This Policy is extended to include reasonable and necessary fees charged by the Property Manager for handling the claim.

There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities. This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

N. PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any Location within the Coverage Territory when removed from the Insured Locations for the purpose of being repaired or serviced, excluding:

1. Personal property insured under another Policy or floater;
2. Personal property excluded under this Policy; or
3. Personal property removed from the Insured Locations for normal storage or processing or preparation for sale or delivery.

O. SERVICE INTERRUPTION: This Policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I., Subparagraph E.24. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines is restored.

The Sublimit set forth in Section I., Subparagraph E.24. applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption. None of the Additional Time Element Coverages set forth in Section V., Paragraph C. apply to the Time Element Coverage provided herein.

P. SPOILAGE: This Policy is extended to cover spoilage as a direct result of a Covered Cause of Loss. The Company shall be liable for direct physical loss or damage to:

1. Perishable goods due to spoilage; or

2. Perishable goods due to contamination from the release of refrigerant including, but not limited to, ammonia.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have applied. Otherwise payment will be determined in accordance with Section IV – Valuation of this Policy.

Perishable goods means personal property:

1. Maintained under controlled conditions for its preservation, and

2. Susceptible to loss or damage if the controlled conditions change.

Q. TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1. Personal property shipped to customers on F.O.B., C & F, or similar terms. The Insured's contingent interest in such shipments is admitted.

2. The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured.

3. Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage;

1. Samples in the custody of salespersons or selling agents.

2. Property insured under import or export ocean cargo policies.

3. Waterborne shipments via the Panama Canal or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

4. Shipments made by air unless via regularly scheduled airlines.

5. Property shipped by mail.

6. Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

7. Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

R. VALUABLE PAPERS AND RECORDS: This Policy is extended to cover Valuable Papers and Records.

**SECTION VII – CONDITIONS**

A. ABANDONMENT: There can be no abandonment to the Company of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy. Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

D. ASSIGNED ADJUSTER: It is hereby agreed that the following shall be designated as the ACCOUNT CLAIM ADJUSTER for all claims reported under this policy provided that he/she agrees to be subject to and fully comply with the Insurance Company's "Claim Handling Guidelines for Independent Adjusters Protocol". The ACCOUNT CLAIM ADJUSTER may not re-assign any claim(s) without the prior approval of the Company.

Company reserves the right to associate a staff adjuster with the ACCOUNT CLAIM ADJUSTER as respects any claim or claims. Company retains the right to terminate the below named ACCOUNT CLAIM ADJUSTER for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the company. In such event, or in the event that the below named ACCOUNT CLAIM ADJUSTER becomes unwilling or unable to perform, a replacement ACCOUNT CLAIM ADJUSTER will be selected by the mutual agreement of the Company and Named Insured.

Adjuster Name: Ying Tse

Adjusting Firm: McLarens

E. ASSIGNMENT: The Insured may not assign this Policy without the Company's prior written consent.

F. BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G. CANCELLATION:

1. This Policy can be canceled by the First Named Insured by providing the Company with:

   a. An advanced written request for cancellation stating when the cancellation shall be effective, and

   b. The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2. This Policy may be canceled by the Company by giving to the Insured at least SIXTY (60) days written notice of cancellation or in the case of non-payment of premium, at least ten (10) days' written notice of cancellation. Such notice may be accompanied with the unearned premium, or if not included, the Company shall return the unearned premium upon demand by the First Named Insured.

3. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. If this Policy is canceled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown on the Declarations. The cancellation will be effective even if the Company has not made or offered a refund.

H. CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I. CURRENCY: Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the country in which the property is located. However, if the risk is located in a country other than the United States or Canada, then the Limits of Liability, Deductibles and Premiums specified shall be in United States funds.

J. DIVISIBLE CONTRACT: Subject to Condition L., if the **Locations** described in this Policy include two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage occurring in any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K. INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

M. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

N. PROTECTION AND PRESERVATION OF PROPERTY:

In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the **Policy Limit**.

O. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

P. REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1. Give prompt written notice of any loss or damage to the Company,
2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3. Protect the property from further loss or damage,
4. Separate the damaged and undamaged personal property,
5. Maintain such property in the best possible order, and
6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,
7. Furnish all other documents or insurance policies that the Company may reasonably require,
8. Allow the Company to access and inspect any of the damaged or undamaged property, and
9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss,
2. The interest of the Insured and of all others in the property,
3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,
4. All other contracts of insurance, whether collectible or not, covering any of said property, and
5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

Q. REVIEW OF VALUES: The Insured shall provide this Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured **Locations**.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**. The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an Actual Cash Value basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Company. Receipt of said Statement of Values by this Company shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Company, or attached to this Policy.

R. SALVAGE AND RECOVERIES: All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

S. SERVICE OF SUIT: In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110 or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this Policy of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

T. SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this Policy.

The Company shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention so to do within sixty (60) days after receipt of the proof of loss herein required.

U. SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;
2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

V. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twenty four (24) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

W. SUSPENSION: Upon the discovery of a dangerous condition with respect to **Equipment Breakdown** to any Insured Property under this Policy, any representative of the Company may immediately suspend the insurance against loss from an Accident to such property or part thereof by giving written notice mailed or delivered to the Insured at the address of the Insured as specified in Section I, or at the location of such property. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this Policy. The Insured shall be allowed the return of the unearned portion of the premium paid for such suspended insurance, pro-rata for the period of suspension.

X. TERRITORIAL LIMITATIONS: Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department’s Office of Foreign Assets Control (“OFAC”).

Y. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this form (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

Z. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that, fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when it does not contain adequate Insured Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

**SECTION VIII –POLICY DEFINITIONS**

A. Aircraft or Vehicle Impact means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

B. Collapse means an abrupt falling or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

C. Defined Peril means Fire; Lightning; Explosion; Windstorm; Hail; Smoke; Aircraft or Vehicle Impact; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Collapse (unless otherwise excluded under Section II – Perils Excluded, Subparagraph B.1.q.); or Leakage from Fire Protection Equipment.

D. Earth Movement means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;
2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, subsidence; and includes tsunami.

E. Earth Movement Counties: As referenced in this Policy, designated Earthquake Zones shall be defined as all Locations situated within the States or Counties as specified below;

1. Pacific Northwest Earthquake Zone Counties

   Washington: Clallum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom

2. New Madrid Earthquake Zone Counties

   Arkansas: Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett

   Illinois: Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St Clair, Washington, Clinton, Bond Madison, Jefferson

   Indiana: Posey, Vanderburgh, Gibson, Warrick, Pike

   Kentucky: Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway

   Mississippi: Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar

   Missouri: Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St Francois, St Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne,, Reynolds, Madison, St Genevieve and Perry

   Tennessee: Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman

F. Electronic Data and Media means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

G. Equipment Breakdown means direct physical damage to Insured Property that is the direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Insured Property. The event must be one of the following:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment

H. Explosion: Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured;

1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3. Combustion gas turbines;

4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will include loss or damage arising or resulting from;

1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition;

1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2. Bursting or rupture caused by freezing;

3. Sonic shock waves, generally known as Sonic Boom;

4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

I. Fine Arts means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

Fine Arts does not mean and does not include any item which would qualify as Valuable Papers and Records.

J. Flood means, whether natural or manmade, Flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a Flood.

K. Fungus, Mold(S), Mildew, Spores or Yeast:

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

L. Land means land except land for which values are reported and premiums are charged hereunder, such as dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such surface containment structures.

M. Leakage from Fire Protection Equipment means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the Fire Protection Equipment for the Insured Location or for any adjoining Locations;

2. Collapse or fall of tanks forming a part of the Fire Protection Equipment or the component parts or supports of such tanks.

The term Fire Protection Equipment includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include;

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the Insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

N. Location means the location as specified in the Statement of Values, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear Land space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

O. Miscellaneous Unnamed Location(s) means a location that has not been included in the Statement of Values on file with the Company and has not been reported to the Company as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

P. Occurrence means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period.

If more than one event for Windstorm, Hail, Named Storm, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single Occurrence. When filing proof of loss, the Insured may elect the moment at which the 72-hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

Q. Pollutants or Contaminants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

R. Riot, Strike or Civil Commotion means riot and civil commotion including;

1. Acts of striking employees while occupying the Insured Location; and
2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

S. Smoke means loss or damage ensuing from a sudden and accidental release of Smoke. The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

T. Valuable Papers and Records means documents that are written, printed, or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;
2. Legal and financial agreements such as deeds and mortgages;
3. Addressograph plates; and
4. Any electrically produced data such as printouts, punched cards, tapes or discs.

Valuable Papers and Records does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

Valuable Papers and Records does not mean and does not include any item which would qualify as Fine Arts.

U. Vandalism and Malicious Mischief means willful and malicious damage to, or destruction of, Insured Property. Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

V. Windstorm or Hail: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

## TRADE AND ECONOMIC SANCTIONS ENDORSEMENT

This endorsement modifies the insurance provided under the following:

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., BROKER MANUSCRIPT

It is understood and agreed that this Policy is amended as follows:

> The Insurer shall not be deemed to provide cover nor be liable to pay any claim or provide any benefit under this Policy to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer to any sanction, prohibition or restriction, including under United Nations resolutions, or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom, or United States of America.

It is understood and agreed that to the extent any coverage may otherwise be provided under this Policy and its endorsements, the provisions of this endorsement will be applicable and will supersede any such other provisions.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

**PROPERTY MILLENNIUM ENDORSEMENT**

It is noted and agreed this Policy is hereby amended as follows:

**A** The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1 correctly recognize any date as its true calendar date;

2 capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

3 capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

**B** It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

**C** It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in **A**, **B**, or **C** above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril.

Defined Peril shall mean fire, lightning, explosion aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow.

In consequence of all the foregoing the Annual Premium remains unaltered.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

**WAR RISK AND TERRORIST EXCLUSION**

It is hereby understood and agreed, that notwithstanding any other war risk or terrorist exclusion that may be in the Policy or any clause limiting or attempting to limit the application of any endorsements to the Policy, this Policy is amended as follows:

The Policy does not cover loss or damage to property caused by, resulting from, contributed to or aggravated by any of the following perils, whether such loss or damage is accidental or intentional, intended or unintended, direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any perils insured by the Policy:

1. war, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack:

    a. by government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

    b. by military, naval or air forces; or

    c. by an agent of any such government, power, authority or force;

2. any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental;

3. insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction;

4. any act of one or more persons, whether known or unknown and whether or not agents of a sovereign power, for Terrorist purposes;

5. hijacking or any unlawful seizure or wrongful exercise or control of any mode of transportation, including but not limited to aircraft, watercraft, truck(s), train(s) or automobile(s), including any attempted seizure of control, made by any person or persons, for Terrorist purposes.

Such loss or damage is excluded regardless of any other cause, event or intervention that contributes concurrently or in any sequence to the loss or damage.

Terrorist purpose means the use or threatened use of any unlawful means, including the use of force or violence against any person(s) or property (ies), for the actual or apparent purpose of intimidating, coercing, punishing or affecting society or some portion of society or government.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

**POLLUTION, CONTAMINATION, DEBRIS REMOVAL EXCLUSION ENDORSEMENT**

1. Property Not Covered

   This Policy does not cover land, land values or water.

2. Pollution and Contamination Exclusion.

   This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.
   Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

   CONTAMINANTS OR POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft Impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

3. Asbestos Exclusions
   This Policy does not cover:

   a. Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system;

   b. Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

   c. Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The coverage afforded does not apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

4. Debris Removal Exclusion

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the Policy term.

The Company will not pay the expense to:

a. Extract contaminants or pollutants from the debris; or

b. Extract Contaminants or pollutants from land or water; or

c. Remove, restore or replace contaminated or polluted land or water; or

d. Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5. Authorities Exclusion

Notwithstanding any of the provisions of this Policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

**MOLD / FUNGUS EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that this Policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s),mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

a. fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

b. mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

c. spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

Such loss or damage described in a., b. or c. above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

## DATA CORRUPTION ENDORSEMENT

It is noted and agreed that this Policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

**SPECIAL CATASTROPHE EARNED PREMIUM PROVISION ENDORSEMENT**

1. If this Policy is canceled by the insured or if the amount of insurance on any Tier 1 location is reduced, and no coverage existed from June 1 to November 30, the return premium is 90% of the pro-rata subject to any minimum earned premium stipulations in the Policy.

2. If coverage existed on any Tier 1 location at any time during the period from June 1 to November 30, the amount of premium returned will be a percentage of the total premium determined as follows:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1 - 180 | 20% |
| 181 - 210 | 15% |
| 211 - 240 | 10% |
| 241 - 270 | 7.50% |
| 271 - 300 | 5% |
| 301 - 330 | 2.50% |
| 331 - 365 | 0% |

3. If Tier 1 locations are added during the term of the Policy, the rate will be calculated as 100% of the annual rate, less the Unearned Factor in Item 2 above.

4. The provisions of this endorsement are in addition to and do not alter any minimum earned premium provisions in the Policy or its attachments.

5. All reference herein to "Tier I", "Tier I Windstorm" or similar "Tier I" references, shall be defined as all locations situated within Tier I States or Counties or Parishes as specified below:

| | |
|---|---|
| Alabama: | Baldwin, Mobile; |
| Florida: | Entire State of Florida; |
| Georgia: | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh; |
| Louisiana: | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Mary, St. Bernard, St. Tammany, Terrebonne, Vermilion; |
| Mississippi: | Hancock, Harrison, Jackson; |
| North Carolina: | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington; |
| South Carolina: | Beaufort, Berkeley, Charleston, Colleton, Georgetown, Horry, Jasper; |
| Texas: | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Willacy; |

Virginia: Accomack, Chesapeake, Essex, Gloucester, Hampton, Isle of Wight, James City, King George, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Poquoson, Portsmouth, Richmond, Stafford, Suffolk, Surry, Virginia Beach, Westmoreland, Williamsburg, York.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

**CYBER EXCLUSION**

It is agreed that this Policy is amended as follows:

**A.** The following additional exclusion is added to this Policy:

This Policy does not insure against any loss, damage, liability, cost or expense either directly or indirectly caused by, arising out of, contributed to, attributable to, or resulting from any of the following cyber incidents/events as set forth in the following provisions 1. through 8. below:

1. **Damage to or Loss of Data** occurring on the **Insured's Computer Systems**;
2. **Computer Malicious Act** on the **Insured's Computer Systems**;
3. **Computer Malware** on the **Insured's Computer Systems**;
4. a **Human Error** affecting the **Insured's Computer Systems**;
5. **System Failure** occurring on the **Insured's Computer Systems**;
6. a **Defect** of the **Insured's Computer Systems**;
7. a **Cyber Extortion**; or
8. **Cyber War**.

Such loss, damage, liability, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, liability, cost or expense, including any **Specified Covered Peril**/specified coverage peril. The cyber incidents/events excluded above apply to all coverages and sections of this Policy. These exclusions apply whether or not the cyber incident/event results in widespread damage or affects a substantial area.

**B.** The boldfaced, capitalized terms used in this Cyber Exclusion endorsement shall have the following meanings and the singular shall include the plural and vice versa:

**Computer Malicious Act** means any wrongful act carried out through the use of **Data**, **Computer Systems** or **Computer Networks**. The term **Computer Malicious Act** shall also encompass a **Denial of Service Attack.**

**Computer Malware** means any hostile or intrusive software, including computer viruses, spyware, computer worms, trojan horses, rootkits, ransomware, keyloggers, dialers, spyware, adware, malicious browser helper objects and rogue security software**,** designed to infiltrate and disrupt computer operations, gather sensitive information, or gain access to **Computer Systems** without consent.

**Computer Network** means a group of **Computer Systems** and other computing hardware devices or network facilities connected via a form of communications technology, including the internet, intranet

and virtual private networks (VPN), allowing the networked computing devices to exchange **Data**.

**Computer Systems** means the information technology (IT), industrial process control or communications systems, as well as any other item or element of hardware including, but not limited to, information technology infrastructure, software or equipment that is designed to be used for the purpose of creating, accessing, processing, protecting, monitoring, storing, retrieving, displaying or transmitting **Data**. The term **Computer Systems** shall also include information technology devices such as laptops, external drives, CD-ROMs, DVD-ROMs, magnetic tapes, magnetic disks or USB sticks that are used in **Data** processing to record and store **Data**.

**Cyber Extortion** means any unlawful and intentional use of a threat or series of threats by an extortionist against the **Data** on an **Insured's Computer Systems** or against the **Insured's Computer Systems** (including but not limited to a **Denial of Service Attack**) in order to extract a **Cyber Extortion Ransom** from the Insured by use of coercion.

**Cyber Extortion Ransom** means anything of value, including money, or other property or services that the Insured is forced to pay or to provide to the extortionist or any other party.

**Cyber Terrorism** means any disruptive act or series of disruptive acts or threat thereof of any person or group of persons, whether acting alone or on behalf of, or in connection with, any organization through the use of **Computer Systems**, to destruct, disrupt, subvert or make use of any **Computer System**, **Computer Network**, information technology infrastructure, the internet, the intranet, telecommunications and/or its content, committed for religious, ideological or political purposes including, but not limited to, the influencing of any government and/or to put the public or a section of the public in fear.

**Cyber War** means any state of hostile conflict, whether declared or not, to resolve a matter of dispute between two or more states, nations, or political entities or organizations by using, wholly or partially, **Computer Systems** or the internet, to render non-functional, disrupt, subvert or make disruptive use of any **Computer System**, **Computer Network**, information technology infrastructure, the internet, the intranet, telecommunications and/or its content.

**Damage to or Loss of Data** means any introduction, corruption, creation, modification, redirection, alteration or deletion of **Data** which, when stored or processed by a **Computer System**, may lead to an impaired, corrupted or abnormal functioning of the **Computer Systems** and/or the interruption or disruption of processing operations.
**Data** means any information, irrespective of the way it is used or rendered including text, figures, voice, images or any machine readable data and including software or programs, which are being transmitted or are stored in a digital format outside the random access memory.
For the avoidance of doubts the term **Data** shall not be considered as tangible property and shall not be covered under this Policy.

**Denial of Service Attack** means any malicious attack leading to a total or partial deprivation, disruption and/or unavailability of **Computer Systems** or **Computer Networks** being altered or rendered temporarily or permanently non-functional or otherwise unavailable to anticipated users of such **Computer Systems** or **Computer Networks** through the deluging and overloading of **Computer Systems** with an incoming stream of requests or **Data**. The term **Denial of Service Attack** includes a distributed denial of service attack in which a multitude of compromised systems are used to coordinate a simultaneous attack as well as both volumetric and application specific attacks.

**Defects** means any fault, defect, malfunction, error or omission in design, plan, specification, material or programming on or of the **Insured's Computer Systems**.

**Employee** means any natural person that performs services or provides labor in the service and on the premises of the Insured under an express or implied employment contract, under which the Insured has the right to control the details of work performance. The term **Employee** shall also include external staff hired by the Insured in order to provide information technology services working within the operational structure and under the functional authority of the Insured.

**Expert** means any person with a high degree of skill in or knowledge of a certain subject, including but not limited to information technology specialists, lawyers, consultants or auditors.

**Human Error** means any negligent or inadvertent information technology or operational technology (OT) operating error, including an error in the choice of software to be used, a set-up error or any improper information technology or operational technology operation carried out by an **Employee** of the Insured.

**Insured's Computer Systems** means:

1. any **Computer Systems** under the control and management of the Insured that are owned, licensed or hired by the Insured;

2. any **Computer Systems** under the control and management of the **Outsourcing Provider** that are owned, licensed or hired by the **Outsourcing Provider** or the Insured; or

3. any **Computer Systems** under the control and management of a customer or supplier of the Insured that are owned, licensed or hired by the customer or supplier of the Insured. The aforementioned term "supplier" shall also include any electricity, cable, satellite, global positioning system (GPS) signal generation, propagation or reception, telecommunication or internet provider.

**Outsourcing Provider** means any information technology service provider that is assigned by the Insured by written contractor by written contracts ultimately authorized by the Insured to offer information technology services including **Data** or **Computer System** management, **Data** storage and **Data** processing, software maintenance and/or development for the benefit of or at the request of the Insured on a **Computer System** that is controlled and managed by the information technology service provider.

**System Failure** means an unintentional or unplanned, wholly or partially, outage, reduction in functionality, availability or operation of a **Computer System** not directly caused by a physical damage.

It is understood that to the extent any coverage may otherwise be provided under this Policy and its endorsements, the provisions of this exclusion shall be applicable and shall supersede any such other provisions.

All other terms and conditions of this Policy remain unchanged.



**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

## COMMUNICABLE DISEASE EXCLUSION

Notwithstanding any other provision of this Policy to the contrary, this Policy does not insure loss of any kind, including but not limited to, any loss of income, loss of use, loss of access, extra expense or consequential loss, directly or indirectly caused by, resulting from, contributed to by, arising out of, attributable to or occurring concurrently or in any sequence with a "communicable disease" or the fear or threat (whether actual or perceived) of a "communicable disease, including but not limited to:

1. the cost to clean-up, detoxify, remove, monitor or test:
   a. for a "communicable disease"; or
   b. any tangible or intangible property insured hereunder that is affected by such "communicable disease";
2. damage, deterioration, loss of value, loss of access, loss of marketability, or loss of use of any tangible or intangible real or personal property directly or indirectly caused by, resulting from, contributed to by, arising out of or attributable to a "communicable disease"; or
3. any time element or business interruption losses, including any time element extensions of coverage such as interruption by civil or military authority directly or indirectly caused by, resulting from, contributed to by, arising out of or attributable to "communicable disease".

As used herein, "communicable disease" means any infectious or contagious agent or substance:

1. Including, but not limited to, a virus, bacterium, parasite or other organism or any mutation thereof, whether deemed living or not, and the diseases caused by such; and
2. Regardless of the method of transmission, that can cause or threaten damage to human health or human welfare.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

**This endorsement, effective:** 05/01/2024

**Forms part of Policy Number:** 0312-8587-1A

**Issued to:** School Board of Volusia County

**By:** Allied World Assurance Company (U.S.), Inc.

## POLICYHOLDER DISCLOSURE STATEMENT UNDER THE TERRORISM RISK INSURANCE ACT

The insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law. However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events. Under the formula, the United States Government will generally reimburse 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible that must be met by the Company, and which deductible is based on a percentage of the Company's direct earned premiums for the year preceding the Certified Act of Terrorism.

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year and the Company has met its deductible under the Act, the Company shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Certified Acts of Terrorism.

**The insured should know that under federal law, the insured is not required to purchase coverage for losses caused by Certified Acts of Terrorism. Unless the insured signs this form and returns it to the Company to indicate the insured's rejection of Terrorism Coverage under the Federal Act, the insured will be covered for Terrorism as defined in the Act and the premium for that coverage is** $_________.

The insured hereby rejects coverage in accordance with the Act.

_________________________________
Signature of Insured

_________________________________
Print Name/Title

_________________________________
Date

EVEREST.

# How to Report a Claim

**Property and Inland Marine**

The Everest Property Claims team is dedicated to providing a best in class claim experience through clear communication and a customer first approach. Our team of Property and Inland Marine Claims Specialists work with you for the life of the claim and are available 24/7 to respond to all questions and concerns. Timely submission of Loss Notices complies with the terms and conditions of your policy and assists us in providing quality service to our policyholders. Any claim or circumstance which may reasonably be expected to give rise to a claim needs to be reported to Everest as soon as possible. In the event you have any questions and/or concerns regarding the claim process, contact Paul Keane:

Bus.: 908-604-7404
Cell: 908-334-8086
**Paul.keane@everestre.com**

**The following methods may be used to promptly report a claim:**

**Option 1:**
**Email Claim Reporting: PropertyMarineClaims@everestre.com**

**Option 2:**
**Phone Reporting Toll-Free: 1-866-287-1736**

**PLEASE FOLLOW THE FOLLOWING STEPS IMMEDIATELY AFTER A LOSS:**

1. **Obtain the Facts:** Find out as much as you can about the incident.

2. **Gather All Supporting Information:** Obtain as much supplemental information as you can before you report the claim:
   - ✓ Policy Number
   - ✓ Name, address, phone
   - ✓ Date of Loss
   - ✓ Loss location

3. **Report the Claim Immediately and Please Provide Your Policy Number:** Don't delay in calling because you don't have all the information. Timely reporting is essential. You can gather and report any missing information at a later date.

## Retention of any and all evidence

Whenever possible, do not make nor have any repairs made until an inspection can be made. Many times immediate repairs are required. If so, it is crucial that **any and all parts** repaired or replaced **be retained and safeguarded until further notice.** In addition, please retain a copy of the repair invoice.

For additional information, please refer to our website: www.everestre.com

# FLORIDA SUPPLEMENTAL DECLARATIONS PAGE

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

 Copyright, Everest Reinsurance Company, 2018 

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375

EVEREST
Everest Re Group, Ltd.

# MANUSCRIPT PROPERTY POLICY DECLARATIONS

**Policy Number: CA3P006695-211** **Renewal of: NEW**

**Named Insured and Address:**
The School Board of Volusia County
P.O. Box 2118
Deland, Florida 32117

**Policy Period:**
**From:** 05/01/2021 **To:** 05/01/2022
(At 12:01 A.M. Standard Time at mailing address)

**Limit of Liability:** $3,000,000 (30%) Part of $10,000,000 excess of Policy Deductibles in any one Occurrence, not to exceed its percentage of the Limit of Liability or any appropriate Sub-limit of Liability or any aggregate Limit of Liability in any Policy Year.

**Perils:**
All Risks of Direct Physical Loss or Damage including Flood, Earth Movement and Named Windstorm and excluding Boiler and Machinery, and as further described in the approved policy form.

**Description of Property Covered:**
Real and Personal property; Furniture & Fixtures; Improvements and Betterments; Inventory; Stock; EDP hardware media and data; Business Income; Extra Expense and as further defined in the policy form.

**Premium:** $450,000 part of $1,500,000 layer premium
In return for the payment of the premium shown above, out of which a commission of 15.0% ($67,500.00 DOLLARS) shall be paid by us, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Forms Attached:** See attached forms schedule

President

Secretary

 Copyright Everest Reinsurance Company, 2017 

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375

EVEREST
Everest Re Group, Ltd.

# SCHEDULE OF FORMS AND ENDORSEMENTS

**Named Insured: The School Board of Volusia County**

**Policy Number: CA3P006695-211** **Effective Date: 05/01/2021**

| Form Number | Edition Date | Endorsement Number | Title – Description |
|---|---|---|---|
| EDEC 819 | 05 20 | | Manuscript Property Policy Declarations |
| EDEC 820 | 05 17 | | Schedule of Forms and Endorsements |
| MacDuff Underwriters | | | Broker Manuscript Property Policy |
| ECP 10 604 | 03 20 | | Biological or Chemical Materials Exclusion |
| ECP 04 619 | 07 20 | | Absolute Cyber Exclusion |
| EIL 03 540 | 01 21 | | Communicable Disease Exclusion |
| ECP 13 010 | 12 20 | | Time Element Exclusion – Non-Physical Loss or Damage |
| ECP 10 606 | 04 18 | | Electronic Data Endorsement |
| ECP 10 608 | 03 17 | | Occurrence Limit of Liability Endorsement |
| ECP 10 609 | 03 17 | | Mold and Fungus Exclusion - Absolute |
| ECP 10 611 | 10 20 | | Seepage And/or Pollution And/or Contamination Exclusion |
| ECP 13 002 | 07 18 | | Builders Risk Exclusion (Wood Frame) |
| ECP 00 565 | 06 18 | | Minimum Earned Premium |

 Copyright Everest Reinsurance Company, 2017 

| | | |
|---|---|---|
| ECP 12 003 | 11 18 | Amendment of Examination Under Oath Provision |
| ECP MAN | 05 17 | Everest Subscribing Endorsement No. 1 |
| ECP MAN | 05 17 | Amendatory Endorsement No. 2 |
| ECP 13 003 | 09 18 | Exclusion of Terrorism – Certified & Non-Certified Acts |
| ECP 10 614 | 03 17 | Method of Claim Notice and Service of Suit Conditions |
| ECP 02 103 | 08 19 | Florida Amendatory Endorsement - Cancellation and Nonrenewal |

President

Secretary

 Copyright Everest Reinsurance Company, 2017 

**MANUSCRIPT DOMESTIC PROPERTY POLICY**

**SECTION I – COVERAGES AND LIMITS OF LIABILITY**

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A. NAMED INSURED: First Named Insured and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

B. MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS: Per Certificates on File with the Company.

C. COVERAGE TERRITORY: Coverage under this Policy applies to **Occurrences** within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

D. LIMIT OF LIABILITY ("Policy Limit"): This Company's maximum liability in any one Occurrence as a result of all covered loss or damage regardless of the number of Locations, coverages, or perils insured under this Policy shall not exceed:

**$3,000,000 PART OF $10,000,000**

E. SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are subject to and not in addition to the **Policy Limit** shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence** unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.**

1. Earth Movement:

a. $ 25,000,000 Annual Aggregate

Subject to the Annual Aggregate Limit for all Earth Movement shown in Subparagraph E.1.a. above:

b. NOT COVERED Annual Aggregate for all Earth Movement in all of the following states combined: California, Alaska, Hawaii, and Puerto Rico

c. NOT COVERED Annual Aggregate for Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.)

d. NOT COVERED Annual Aggregate for New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.)

2. Flood:

a. $ 25,000,000 Annual Aggregate

b. $ 25,000,000 Subject to the Annual Aggregate Limit for all Flood shown in Subparagraph E.2.a. above, the Annual Aggregate as respects Flood for Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

3. Named Storm: $100,000,000 Regardless of the number of Coverages, Locations or Perils involved including, but not limited to, all Flood (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain, the maximum amount the Company will pay per Occurrence as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression). In the event covered Loss or Damage by Flood arises out of a Named Storm, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Flood shall be the Sublimits of Liability for Flood as shown in Subparagraphs E.2.a. and E.2.b. above. However, if Flood is not covered, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Named Storm shall exclude Loss or Damage by Flood.

4. Debris Removal: The Company's total liability for Debris Removal per Occurrence for all Insured Locations sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

a. 25 % of the amount of covered direct physical loss or damage payable for all Insured Locations; or

b. $ 1,000,000

5. Accounts Receivable: $ 250,000

6. Civil or Military Authority: 30 Days, but in no event will the Company pay more than $ NOT APPLICABLE

7. Contingent Time Element: $ 1,000,000

8. Demolition & Increased Cost of Construction: (See Section VI – Additional Coverages, Paragraph C.)

a. Demolition Coverage A: INCLUDED
b. Demolition Coverage B: $5,000,000
c. Demolition Coverage C: $5,000,000

9. Electronic Data and Media: $ 250,000

10. Equipment Breakdown: $ NOT COVERED

11. Spoilage: $ 250,000

12. Errors and Omissions: $ 100,000, Subject to all other sublimits contained herein.

13. Extended Period of Indemnity: 180 Days

14. Extra Expense: $ 10,000,000

15. Fine Arts: $ 1,000,000

16. Fire Brigade Charges: $ 2,500

17. Ingress/Egress Coverage: 30 Days, but in no event will the Company pay more than $ 2,500,000

18. Leasehold Interest: $ 1,000,000

19. Limited Pollution Coverage: $ 50,000 Annual Aggregate

20. Miscellaneous Unnamed Locations: $ 5,000,000, Subject to all other sublimits contained herein.

21. Newly Acquired Property: 90 Days, but in no event will the Company pay more than $ 1,000,000 Subject to all other sublimits contained herein.

22. Ordinary Payroll: NOT COVERED Days

23. Professional Fees: $ 1,000,000

24. Service Interruption: $10,000,000. Insured physical loss or damage must occur within One (1) state mile from the insured's premises for coverage to apply. A qualifying period of 24 hours applies to this coverage.

25. Transit: $100,000, but no more than $25,000 per Conveyance

26. Valuable Papers and Records: $ 1,000,000

F. MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s),

2. As respects each Location insured by this Policy, <u>one-hundred (100%) percent</u> of the total combined stated values for all categories of Insured Property (e.g. building, contents) and other covered exposures (e.g., time element, extra expense, rental loss) shown for that Location on the latest Statement of Values or other documentation on file with the Company, or

3. The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

G. DEDUCTIBLE: Each claim for loss or damage under this policy shall be subject to a per occurrence deductible amount of $100,000, except $25,000 for Automobile Physical Damage & Inland Marine, unless a specific deductible shown below applies:

1. Flood:

   a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.1.b.:

   b. 3% of Total Insurable Values (TIV) at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ 500,000 any one Occurrence as respects Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

2. Earth Movement:

   a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.2.b, G.2.c., or G.2.d.:

   b. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in California, Hawaii, Alaska, and Puerto Rico;

   c. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.);

   d. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.

3. Windstorm or Hail:

   a. $ 100,000 Per Occurrence, except as follows:

   b. 3% of Total Insurable Values (TIV) "Per Building" at the time of the loss at each location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression), regardless of the number of Coverages, Locations, or Perils involved (including but not limited to, all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum of $500,000 any one occurrence;

4. Time Element: NOT APPLICABLE Days

The following two paragraphs apply to Subparagraphs G.1. through G.4, inclusive:

In each case of loss or damage covered by this Policy, the Company shall not be liable unless the Insured sustains loss or damage in a single Occurrence greater than any applicable deductible described herein and then, if this is a quota share Policy, only for the Company's share in excess of such deductible. When this Policy covers more than one Location, the deductible shall apply against the total loss or damage covered by this Policy in any one Occurrence, unless otherwise stated in this Paragraph G.

If two or more deductible amounts provided in this Policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in this Policy. However, if:

1. The Time Element deductible and another deductible apply to a single **Occurrence**, then the Company shall apply both deductibles to the **Occurrence**; and

2. Covered Loss or Damage by **Flood** arises out of a Named Storm, then the Company shall apply the **Flood** deductible set forth in Subparagraph G.1. or the Named Storm deductible set forth in Subparagraph G.3.b., whichever is greater.

**SECTION II – COVERED CAUSES OF LOSS**

A. PERILS INSURED: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a Covered Cause of Loss. However:

      i. If fire not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

      ii. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

         (1) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

         (2) By military, naval, or air forces; or

         (3) By an agent of any such government, power, authority, or force;

      ii. Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

      iii. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

   Including any consequence of Subparagraphs b.i., b.ii., or b.iii. above.

c. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured, or others listed above without the knowledge of the Insured is covered.

d. Asbestos material removal, except asbestos that itself incurs direct physical loss or damage caused by a Defined Peril at the Insured Location.

e. The actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any Covered Cause of Loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to Insured Property arising out of seepage, contamination, or pollution caused by a Defined Peril at the Insured Location.

f. Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

g. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing damage.

j. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an Occurrence away from the Location(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

k. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

l.

i. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

ii. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

iii. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

This exclusion shall not apply to any ensuing physical damage, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

m. Error or omission in Electronic Data and Media machine programming or instructions, including, loss attributable to program design constraints, networking compatibility and original business applications.

n. The failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

i. correctly recognizes any date as its true calendar date;

ii. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

iii. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command, which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

It is further understood that the Insurer will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in a. above.

Such Damage or Consequential Loss described in a., b., or c. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This exclusion shall not apply to any subsequent damage or consequential loss, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

o. Fungus, Mold(s), Mildew, Spores or Yeast; or any spores or toxins created or produced by or emanating from such Fungus, Mold(s), Mildew, Spores or Yeast.

p. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

q. Loss or damage arising out of:

i. Building or any part of a building that is in danger of falling down or caving in,

ii. Any part of a building that has separated from another part of the building, or

iii. A building or any part of a building that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

However, the Company does cover loss or damage arising out of Collapse.

r. Equipment Breakdown to vehicles or any equipment on vehicles, draglines, or excavation or construction equipment.

s. Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in Section I. Subparagraph E.

2. The Company does not insure for loss or damage caused by any of the following:

a. Delay, loss of market, or loss of use.

b. Indirect, remote, or consequential loss or damage.

c. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

d. Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses, or any other similar act.

**SECTION III – INSURED PROPERTY**

A. INSURED PROPERTY: Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

1. Real property, including new buildings and additions under construction at an Insured Location, and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real property;

3. Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Personal property of others in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against under this Policy;

5. Contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any time element coverage provided by this Policy.

B. PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

1. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2. Land, land values, any substance in or on Land, or any alteration to the natural condition of the Land;

3. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4. Standing timber, growing crops, plants, lawns, trees, shrubs, or animals;

5. Drainage systems, pavements or roadways;

6. Vehicles licensed for highway use, watercraft, aircraft, and railroad rolling stock;

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts, any mining equipment or mining property located below the surface of the ground;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft while on the launch pad, or after time of launch;

12. Dams, dikes, bridges, tunnels, reservoirs and canals;

13. Docks, piers and wharves;

14. Transmission and distribution lines of every type and description; except when located on the Insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire.

**SECTION IV – VALUATION**

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraph B. through M., inclusive, below: Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

B. Stock in process will be valued at the cost of raw materials and labor expended plus the proper proportion of overhead charges.

C. Finished goods manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. Raw materials, supplies and other merchandise not manufactured by the Insured will be valued at the replacement cost.

E. Valuable Papers and Records will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

F. Electronic Data and Media will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the value of the blank media.

G. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties, the replacement cost if replacement cost values have been reported to the Company and if actually replaced; otherwise the actual cash value with proper deduction for depreciation and obsolescence; [but not to exceed the cost to repair or replace the property with material of like kind and quality].

H. Leasehold improvements and betterments will be valued as follows;

1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments;

2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost:

   The Company will determine the proportionate value as follows:

   a. Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

   b. Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

   If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3. Nothing if others pay for repairs or replacement.

I. Fine Arts will be valued as follows:

1. If there is no Agreed Value on file with the Company, then the lesser of:

   a. The cost to repair or replace the fine art, or

   b. The appraised value which will be determined as of the time of the loss.

2. If there is an Agreed Value on file with the Company, then the Agreed Value on file with the Company.

J. Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1. Any collection expenses over and above the normal collection costs;

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K. Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1. The cost to repair or replace the damaged property, or

2. The price at which the property is offered for sale less the market value of the **Land**.

L. Property in Transit: In case of loss, the basis of adjustment shall be:

1. Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2. Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3. Property of others not under invoice shall be valued at the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

4. Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value applies.

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

**SECTION V – TIME ELEMENT COVERAGE**
**GROSS EARNINGS**

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

    a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

    b. For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

    c. Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured’s Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

    a. normal operations resume, or

b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

a. To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

b. To replace physically damaged or destroyed mercantile stock necessary to resume operations.

c. To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

1. Required for restaffing or retraining employees, or

2. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above, or

3. Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C. ADDITIONAL TIME ELEMENT COVERAGES

1. EXTRA EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured. Extra Expense means:

a. The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b. The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2. RENTAL VALUE: As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

   Rental Value means the sum of:

   a. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

   b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

   c. The fair rental value of any portion of such property which is occupied by the Insured.

   Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3. ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party.

4. SOFT COSTS: For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during Period of Interruption (described in Section V., Paragraph B. above). Such Soft Costs must be attributable to the loss.

   The Company will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs means:

   a. The amount of actual interim or construction financing interest, including loan fees and other onetime charges incurred to negotiate a new construction loan and/or extend the existing one;

   b. Realty taxes and ground rent if any;

   c. Advertising and promotional expenses;

   d. Cost of additional commissions;

   e. Architects, surveyors, legal, consulting engineers, or other fees not otherwise covered under this Policy;

   f. Project administration expense, but not including development fees;

   g. Insurance premiums; and

   h. Finder’s fee refunds.

5. CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

a. wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured, or

b. wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the COVERAGE TERRITORY.

6. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's real or personal property is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I., Subparagraph E.6. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.6.

7. INGRESS & EGRESS: This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I., Subparagraph E.17. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

8. EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a. the date on which the liability of the Company for loss or damage would otherwise terminate; or

b. the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in Section I., Subparagraph E.13. starting with later of a. or b. above. This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

With respect to Section V., Subparagraphs C.6. and C.7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Company will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D. ADDITIONAL EXCLUSIONS: Section V – Time Element Coverage does not cover:

1. IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

2. REMOTE LOSS –

   a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order,

   b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature, or

   c. Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises,

Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this Section V;

3. FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction;

4. TRANSIT - Any loss resulting from loss or damage to property in transit.

**SECTION VI – ADDITIONAL COVERAGES**

The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the Earth Movement, Flood, or Named Storm Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1. Any collection expenses over and above the normal collection costs.

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable

is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the Insured Locations of debris of Insured Property remaining as a result of direct physical loss or damage insured against under this Policy when the Insured gives written notice of such direct physical loss or damage to the Company, no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the Pollutant or Contaminant therein or thereon, whether or not the contamination results from an insured event.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay:

1. Under Demolition Coverage A: For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building;

2. Under Demolition Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

3. Under Demolition Coverage C: For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced;

The Company shall not be liable for any cost of demolition or increased cost of replacement, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

D. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to Electronic Data and Media.

E. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to;

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

   a. Include any Location of the Insured at the inception of the Policy; or

   b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly acquired location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values after a covered loss.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Company when discovered.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or Miscellaneous Unnamed Locations provisions of this Policy.

F. FINE ARTS: This Policy is extended to cover direct physical loss or damage to fine arts. However, no coverage is provided for:

   1. Breakage of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture; antique jewelry or similar fragile articles, unless such breakage is caused by a Defined Peril at the Insured Location; or

   2. Loss or damage as a result of restoring, repairing, or retouching processes.

G. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES: This Policy covers the following expenses resulting from a Covered Cause of Loss:

   1. Fire brigade charges and any extinguishing expenses which the Insured incurs;

   2. Loss and disposal of fire extinguishing materials expended.

   There is no coverage for any costs incurred as a result of a false alarm.

H. LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an Insured Location. No sublimit of liability applies to this additional coverage, but in no event, will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

I. LEASEHOLD INTEREST: If Insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover The Interest of the Insured as Lessee or The Interest of the Insured as Lessor, whichever is applicable, but only for the first three months succeeding the date of the loss and the Net Lease Interest shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1. The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2. Improvements and betterments to real property which are not covered under any other section of this Policy; and

3. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions: The following terms, wherever used in this section shall mean:

1. The Interest of the Insured as Lessee is defined as:

   a. the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

   b. the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2. The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3. Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

J. LIMITED POLLUTION COVERAGE: This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of Pollutants or Contaminants from Land or water at an Insured Location when such Land or water is contaminated or polluted due to a Covered Cause of Loss at the Insured Location. There will be no coverage unless such expenses are reported to the Company within 180 days after the date of such Covered Cause of Loss.

K. NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy. Coverage under this additional coverage ceases at the earlier of the following dates:

1. Ninety (90) days from the date of acquisition or lease of such property or such other number of days shown in Section I for Newly Acquired Property, if applicable, or

2. When the newly acquired location is bound by the Company; or

3. The Company notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Miscellaneous Unnamed Locations provisions of this Policy.

L. PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

No sublimit of liability applies to this additional coverage.

M. PROFESSIONAL FEES: This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy. This Policy is extended to include reasonable and necessary fees charged by the Property Manager for handling the claim.

There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities. This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

N. PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any Location within the Coverage Territory when removed from the Insured Locations for the purpose of being repaired or serviced, excluding:

1. Personal property insured under another Policy or floater;
2. Personal property excluded under this Policy; or
3. Personal property removed from the Insured Locations for normal storage or processing or preparation for sale or delivery.

O. SERVICE INTERRUPTION: This Policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I., Subparagraph E.24. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines is restored.

The Sublimit set forth in Section I., Subparagraph E.24. applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption. None of the Additional Time Element Coverages set forth in Section V., Paragraph C. apply to the Time Element Coverage provided herein.

P. SPOILAGE: This Policy is extended to cover spoilage as a direct result of a Covered Cause of Loss. The Company shall be liable for direct physical loss or damage to:

1. Perishable goods due to spoilage; or

2. Perishable goods due to contamination from the release of refrigerant including, but not limited to, ammonia.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have applied. Otherwise payment will be determined in accordance with Section IV – Valuation of this Policy.

Perishable goods means personal property:

1. Maintained under controlled conditions for its preservation, and

2. Susceptible to loss or damage if the controlled conditions change.

Q. TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1. Personal property shipped to customers on F.O.B., C & F, or similar terms. The Insured's contingent interest in such shipments is admitted.

2. The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured.

3. Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage;

1. Samples in the custody of salespersons or selling agents.

2. Property insured under import or export ocean cargo policies.

3. Waterborne shipments via the Panama Canal or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

4. Shipments made by air unless via regularly scheduled airlines.

5. Property shipped by mail.

6. Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

7. Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

R. VALUABLE PAPERS AND RECORDS: This Policy is extended to cover Valuable Papers and Records.

**SECTION VII – CONDITIONS**

A. ABANDONMENT: There can be no abandonment to the Company of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy. Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

D. ASSIGNED ADJUSTER: It is hereby agreed that the following shall be designated as the ACCOUNT CLAIM ADJUSTER for all claims reported under this policy provided that he/she agrees to be subject to and fully comply with the Carrier (s) "Claim Handling Guidelines for Independent Adjusters Protocol". The ACCOUNT CLAIM ADJUSTER may not re-assign any claim(s) without the prior approval of the Company.

Carrier (s) reserves the right to associate a staff adjuster with the ACCOUNT CLAIM ADJUSTER as respects any claim or claims. Carrier (s) retains the right to terminate the below named ACCOUNT CLAIM ADJUSTER for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the company. In such event, or in the event that the below named ACCOUNT CLAIM ADJUSTER becomes unwilling or unable to perform, a replacement ACCOUNT CLAIM ADJUSTER will be selected by the mutual agreement of the Company and Named Insured.

Adjuster Name: NOT APPLICABLE

Adjusting Firm: NOT APPLICABLE

E. ASSIGNMENT: The Insured may not assign this Policy without the Company's prior written consent.

F. BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G. CANCELLATION:

1. This Policy can be canceled by the First Named Insured by providing the Company with:

   a. An advanced written request for cancellation stating when the cancellation shall be effective, and

   b. The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2. This Policy may be canceled by the Company by giving to the Insured at least SIXTY (60) days written notice of cancellation or in the case of non-payment of premium, at least ten (10) days' written notice of cancellation. Such notice may be accompanied with the unearned premium, or if not included, the Company shall return the unearned premium upon demand by the First Named Insured.

3. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. If this Policy is canceled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown on the Declarations. The cancellation will be effective even if the Company has not made or offered a refund.

H. CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I. CURRENCY: Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the country in which the property is located. However, if the risk is located in a country other than the United States or Canada, then the Limits of Liability, Deductibles and Premiums specified shall be in United States funds.

J. DIVISIBLE CONTRACT: Subject to Condition L., if the **Locations** described in this Policy include two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage occurring in any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K. INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

M. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

N. PROTECTION AND PRESERVATION OF PROPERTY:

In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the **Policy Limit**.

O. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

P. REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1. Give prompt written notice of any loss or damage to the Company,
2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3. Protect the property from further loss or damage,
4. Separate the damaged and undamaged personal property,
5. Maintain such property in the best possible order, and
6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,
7. Furnish all other documents or insurance policies that the Company may reasonably require,
8. Allow the Company to access and inspect any of the damaged or undamaged property, and
9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss,
2. The interest of the Insured and of all others in the property,
3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,
4. All other contracts of insurance, whether collectible or not, covering any of said property, and
5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

Q. REVIEW OF VALUES: The Insured shall provide this Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured **Locations**.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**. The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an Actual Cash Value basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Company. Receipt of said Statement of Values by this Company shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Company, or attached to this Policy.

R. SALVAGE AND RECOVERIES: All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

S. SERVICE OF SUIT: In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Carrier (s), or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this Policy of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

T. SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this Policy.

The Company shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention so to do within sixty (60) days after receipt of the proof of loss herein required.

U. SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;
2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

V. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twenty four (24) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

W. SUSPENSION: Upon the discovery of a dangerous condition with respect to **Equipment Breakdown** to any Insured Property under this Policy, any representative of the Company may immediately suspend the insurance against loss from an Accident to such property or part thereof by giving written notice mailed or delivered to the Insured at the address of the Insured as specified in Section I, or at the location of such property. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this Policy. The Insured shall be allowed the return of the unearned portion of the premium paid for such suspended insurance, pro-rata for the period of suspension.

X. TERRITORIAL LIMITATIONS: Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Y. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this form (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

Z. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that, fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when it does not contain adequate Insured Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

**SECTION VIII –POLICY DEFINITIONS**

A. Aircraft or Vehicle Impact means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

B. Collapse means an abrupt falling or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

C. Defined Peril means Fire; Lightning; Explosion; Windstorm; Hail; Smoke; Aircraft or Vehicle Impact; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Collapse (unless otherwise excluded under Section II – Perils Excluded, Subparagraph B.1.q.); or Leakage from Fire Protection Equipment.

D. Earth Movement means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;
2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, subsidence; and includes tsunami.

E. Earth Movement Counties: As referenced in this Policy, designated Earthquake Zones shall be defined as all Locations situated within the States or Counties as specified below;

1. Pacific Northwest Earthquake Zone Counties

Washington: Clallum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom

2. New Madrid Earthquake Zone Counties

Arkansas: Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett

Illinois: Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St Clair, Washington, Clinton, Bond Madison, Jefferson

Indiana: Posey, Vanderburgh, Gibson, Warrick, Pike

Kentucky: Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway

Mississippi: Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar

Missouri: Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St Francois, St Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne,, Reynolds, Madison, St Genevieve and Perry

Tennessee: Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman

F. Electronic Data and Media means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

G. Equipment Breakdown means direct physical damage to Insured Property that is the direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Insured Property. The event must be one of the following:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment

H. Explosion: Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured;

1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3. Combustion gas turbines;

4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will include loss or damage arising or resulting from;

1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition;

1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2. Bursting or rupture caused by freezing;

3. Sonic shock waves, generally known as Sonic Boom;

4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

I. Fine Arts means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

Fine Arts does not mean and does not include any item which would qualify as Valuable Papers and Records.

J. Flood means, whether natural or manmade, Flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a Flood.

K. Fungus, Mold(S), Mildew, Spores or Yeast:

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

L. Land means land except land for which values are reported and premiums are charged hereunder, such as dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such surface containment structures.

M. Leakage from Fire Protection Equipment means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the Fire Protection Equipment for the Insured Location or for any adjoining Locations;

2. Collapse or fall of tanks forming a part of the Fire Protection Equipment or the component parts or supports of such tanks.

The term Fire Protection Equipment includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include;

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the Insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

N. Location means the location as specified in the Statement of Values, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear Land space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

O. Miscellaneous Unnamed Location(s) means a location that has not been included in the Statement of Values on file with the Company and has not been reported to the Company as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

P. Occurrence means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period.

If more than one event for Windstorm, Hail, Named Storm, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single Occurrence. When filing proof of loss, the Insured may elect the moment at which the 72-hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

Q. Pollutants or Contaminants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

R. Riot, Strike or Civil Commotion means riot and civil commotion including;

1. Acts of striking employees while occupying the Insured Location; and
2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

S. Smoke means loss or damage ensuing from a sudden and accidental release of Smoke. The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

T. Valuable Papers and Records means documents that are written, printed, or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;
2. Legal and financial agreements such as deeds and mortgages;
3. Addressograph plates; and
4. Any electrically produced data such as printouts, punched cards, tapes or discs.

Valuable Papers and Records does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

Valuable Papers and Records does not mean and does not include any item which would qualify as Fine Arts.

U. Vandalism and Malicious Mischief means willful and malicious damage to, or destruction of, Insured Property. Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

V. Windstorm or Hail: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

 Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc., used with permission 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE CYBER EXCLUSION

It is understood and agreed that the following Exclusion is added to the Policy:

a. This policy does not insure against loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event contributing concurrently or in sequence to the loss or damage:

**Cyberterrorism**, **Cyberwarfare** or any **Cyber Event**, including loss, damage cost or expense resulting from or caused directly or indirectly by any of the following*:*

i. Physical loss or damage to stock in process or finished goods manufactured by or for the Insured caused by or resulting from **Cyberterrorism**, **Cyberwarfare**, or a **Cyber Event** that impacts the processing, manufacturing, or testing of such property or while it is otherwise being worked on;

ii. Any unauthorized access to or unauthorized use of **Electronic Data**, **Electronic Media and Computer Systems** or **Cloud Computing Services**, including any attempt to collect, expose, alter, destroy, steal or disclose any person's or organization's confidential, personal, proprietary or other nonpublic information in any recordable form*;*

iii. Any action which is designed to disable, slow or completely interrupt or deny an authorized party from gaining access to the Insured's **Electronic Media and Computer Systems** or website;

iv. Any interruption of voice, data, video, data processing, data transmission services, or **Cloud Computing Services** at the facilities of the provider (including satellites and transmission and distribution lines) of such services that prevents in whole or in part the delivery of such provided services;

v. Extortion threats, fraud or theft involving any **Electronic Data**, **Electronic Media and Computer Systems,** website or any confidential, personal, proprietary or other nonpublic information including but not limited to costs or expenses associated with notification, remediation, mitigation or prevention of a security breach;

However, in the event that fire or explosion result from any cause or event described above, this Policy, subject to all its terms, conditions and exclusions, will cover loss occurring during the Policy period to property insured by this Policy directly caused by such fire or explosion.

b. DEFINITIONS:

i. **Cloud Computing Services:** Services: (i) in the business of storing, managing and processing **Electronic Data** for which the Insured has a written contract and (ii) that provide access to and use of software and/or a network of remote servers hosted away from an Insured Location to store, manage or process such **Electronic Data.**


Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc., used with its permission

ii. **Cyber Event**:

1. Damage, destruction, distortion, erasure, corruption, alteration, loss of use, reduction in the functionality of, or any other loss or damage to **Electronic Data**, **Electronic Media and Computer Systems**, or websites;

2. Any error or omission or series of related errors or omissions involving access to or processing, programming, use, or operation of any **Electronic Media and Computer Systems**;

3. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility.

iii. **Cyberterrorism**: Premeditated use of disruptive activities, or threat to use disruptive activities, against an Insured's **Electronic Data**, **Electronic Media and Computer Systems** or **Cloud Computing Services**, with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person in furtherance of such objectives.

iv. **Cyberwarfare**: Actions taken in cyberspace by state actors (or by non-state actors with significant state direction or support) that constitute a serious threat to another state's security, or an action of the same nature taken in response to a serious threat to a state's security, whether actual or perceived.

vi. **Electronic Data**: Facts, concepts and information, including compilation thereof, converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment, including programs, software, applications, operating systems, audio and image files, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

vii. **Electronic Media and Computer Systems**: Hardware, devices and electronic equipment used for the purpose of creating, accessing, processing, protecting, monitoring, storing, retrieving, displaying or transmitting **Electronic Data**, including but not limited to associated input and output devices, laptop computers, desktop computers, data storage devices of all kinds, external drives, magnetic tapes, discs, networking equipment, components, servers, data processing equipment, information repository, computer memory, microchip, microprocessors, computer chips, integrated circuits, systems controlling or associated with the operation or monitoring of equipment or machinery, or similar devices or equipment or non-computer equipment, whether the Insured's property or not.

This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto relating to Cyber, Electronic Data, Media or Computing Services, replaces that wording.


Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc., used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

It is understood and agreed that the following Exclusion is added to the Policy:

**A.** We will not pay for any loss, cost, damage or expense:

**1.** Arising out of, caused by, attributed to, or occurring concurrently or in any sequence to "communicable disease"; or

**2.** To clean-up, detoxify, remove, monitor or test:

**(a)** For a "communicable disease"; or

**(b)** Any tangible or intangible property insured under this policy that is affected by such "communicable disease".

Any contamination of property (whether actual or suspected) or business interruption loss, cost, damage or expense arising out of or caused by any virus, parasite or microorganism or any variant or mutation thereof is not direct physical loss, cost, damage or expense insured under this policy. This exclusion also applies to any loss arising directly or indirectly out of fear or threat (whether actual or suspected) or arising directly or indirectly from order of any civil or military authority relating to the actual or suspected presence of, any virus, bacterium or other microorganism or any variant or mutation thereof.

**B.** The exclusion set forth in Paragraph **A.** above applies to all coverage, coverage extension(s), additional coverage(s), and exception(s) to exclusions under all forms and endorsements that comprise this Coverage Part or Policy.

**C.** For the purposes of this endorsement, the following Definition applies:

"Communicable disease" means any infectious or contagious substance:

**1.** Including, but not limited to a virus, bacterium, parasite or other microorganism or any variant or mutation thereof whether deemed living or not, and

**2.** Regardless of the method of transmission, whether direct or not, including, but not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal.

that can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to tangible or intangible property insured under this policy.

All other terms and conditions of this Policy apply.


Copyright, Everest Reinsurance Co., 2021
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TIME ELEMENT EXCLUSION – NON-PHYSICAL LOSS OR DAMAGE

It is understood and agreed that the following modifies coverage provided under this policy.

This policy does not insure against business interruption or time element loss, liability, cost, expense (including but not limited to expense incurred for advertisement, public relations or goodwill), fine or penalty arising out of, contributed to by, resulting from, or in any way related to any non-physical loss or damage, including but not limited to:

1. Actual or suspected injury or illness sustained by any person arising from matter in food and/or drink provided at the insured location;
2. The inability to use the insured premises due to the suspected or actual infestation of vermin, insects or pests;
3. The presence of microorganisms or algal bloom, or any oil or chemical spill which results in the closure or inability to use any beach, river, or other natural body of water;
4. The closure or interference in the use of any airport or transit hub when such closure is not the direct result of covered direct physical loss or damage; or
5. The occurrence of an incident(s) of violent crime such as murder, suicide, assault, rape, or any unwanted contact which impacts the insured's business activities or operations.

All other terms and conditions of this Policy remain unchanged.


Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc., used with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

**1. Electronic Data Exclusion**
Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

(a) This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

(b) However, in the event that a peril listed below results from any of the matters described in Paragraph (a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils
Fire
Lightning
Explosion
Aircraft or Vehicle Impact

**2. Electronic Data Processing Media Valuation**
Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored.

Such cost of reproduction shall include all reasonable and necessary amounts, is included for any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.


Copyright, Everest Reinsurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is agreed that the following special terms and conditions apply to this policy:

1. The limit of liability or Amount of Insurance shown on the face of this policy, or endorsed on this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

   The term "Occurrence" shall mean any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism and malicious mischief, or terrorism, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall have commenced, which may not be earlier than the time when the first loss to covered property occurs.

2. The premium for this policy is based upon the Statement of Values provided to the Insurer(s) by or on behalf of the Insured, and kept on file with the Insurer(s). In the event of loss under this policy, the liability of the Insurer(s) shall be limited to the least of the following:

   a.) The actual adjust amount of loss, less applicable deductible(s);

   b.) Not greater than 100% of the individually stated value for each scheduled item of Covered Property, Business Income or Extra Expense shown in the Schedule of locations and Values attached to this policy

   c.) Any other limit of liability or sublimit of insurance or amount of insurance specifically stated in this policy to apply to any particular insured loss, or coverage, or location.

 Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc., used with permission 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOLD AND FUNGUS EXCLUSION – ABSOLUTE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

In consideration of the premium charged, it is understood and agreed that this Company shall not be liable for any loss or damage in the form of, caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such mold(s), fungus, yeast or mildew;

(a) fungus includes, but is not limited to, any plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rust, mildews, smuts and mushrooms;
(b) mold(s) include, but is not limited to, any superficial growth produced on damp or decaying matter or on living organisms, and fungi that produce mold(s)
(c) spore(s) means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildews, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.


Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc., used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Schedule

| | |
|---|---|
| Pollution Clean-up of Land and Water Sub-Limit: | $50,000 Program and Annual Aggregate |

It is understood and agreed that the following Exclusion is added to the Policy:

**1. <u>SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION</u>**

Notwithstanding any provisions in the policy to which this Endorsement is attached, this policy does not insure against loss, damage, costs or expenses in connection with the actual, alleged or threatened release, discharge, escape, dispersal, or seepage of "contaminants and/or pollutants", all whether direct or indirect, proximate or remote or in whole or in part caused by any cause whatsoever. Nevertheless if a fire or explosion arises directly from seepage and/or contamination and/or pollution, loss or damage insured under this policy arising directly from that peril shall (subject to the terms, conditions and limitations of the policy) be covered

The Insured shall give notice to the Company of intent to claim no later than 12 months after the date of the original physical loss or damage.

**2. <u>POLLUTION CLEAN-UP OF LAND AND WATER</u>**

Notwithstanding the provisions of the preceding exclusion in this Endorsement or any provision respecting seepage and/or "contaminants and/or pollutants", and/or debris removal and/or cost of clean-up in the policy to which this Endorsement is attached, this Policy also covers the reasonable and necessary cost for the cleanup, removal and disposal of "contaminants and/or pollutants" from uninsured property consisting of land and water at the Insured Location if the release, discharge or dispersal of "contaminants and/or pollutants" is a direct result of insured physical loss or damage to insured property. The maximum amount insured and payable under this Policy for Pollution Clean-Up is the Pollution Clean-up of Land and Water Sublimit shown in the Schedule of this endorsement.

This Policy does not cover the cost to cleanup, remove and dispose of "contaminants and/or pollutants" from such property:

**a.** at any location insured for Personal Property only.

**b.** at any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or Miscellaneous Unnamed Location coverage provided by this Policy.

**c.** when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.


Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc., used with permission

For the purposes of this endorsement, the following Definition applies:

“Contaminants and/or pollutants” means any material that after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, loss of use marketability or loss of use of property insured by this Policy, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, parasite, organism, mold, spores, vaccines, waste material, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.


Copyright, Everest Reinsurance Company, 2020
Includes copyrighted material of Insurance Services Office, Inc.,
used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUILDERS RISK EXCLUSION
# (WOOD FRAME)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

In consideration of the premium charged, it is hereby understood and agreed that this policy does not provide coverage for the following:

Buildings or structures made of wood or any other combustible material that are under the course of construction or erection, including:

**(1)** Building materials, supplies, equipment, fixtures and machinery used for or incidental to construction;

**(2)** Foundations of a building or structure described in the Declarations while in the course of construction; and

**(3)** Temporary structures built or assembled on site, including cribbing, scaffolding and construction forms.

However, subject to the terms and conditions of this policy, this policy shall provide coverage for existing buildings undergoing normal maintenance, repairs or renovations which are considered to be finished property in the course of construction. For the purposes of this endorsement, an existing building is not considered to be undergoing normal maintenance, repairs or renovations when it is stripped down to its structural components and rebuilt.

**All other terms and conditions remain the same.**


Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

**SCHEDULE**

| | | |
|---|---|---|
| **Minimum Earned Premium:** | 35 | % of the TOTAL PREMIUM shown on the DECLARATIONS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

The following provision is added to the Cancellation Condition and replaces any provision to the contrary:

If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be pro rata, less 10%, and such refund will be subject to the minimum earned premium shown in the Schedule. The cancellation will be effective even if we have not made or offered a refund.


Copyright, Everest Reinsurance Company, 2018
Includes copyrighted material of ISO Properties, Inc., used with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF EXAMINATION UNDER OATH PROVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

It is hereby understood and agreed that the Policy is amended as follows:

The provisions relating to duties of the Insured in the event of loss or damage are amended as follows:

**1.** Any provision relating to examination under oath is replaced by the following:

The Company may examine the Named Insured, any other insured, the Insured's agents or representatives, and all others, under oath, while not in the presence of any other insured, agent or representative and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's book and records. Such examination shall take place in the County where the building is located. In the event of an examination, an insured's answers must be signed.

**2.** The following provisions are added:

In the event of a direct damage loss which the Insured believes is insured herein, the Insured has the duty to:

**a.** Provide the Company with the records and documents the Company requests and permit the Company to make copies;

**b.** Any and all insureds must execute all authorizations for the release of information when requested by the Company;

**c.** The Named Insured and any insured must submit to recorded statements when requested by the Company.

**All other terms and conditions remain the same.**


Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**SUBSCRIPTION ENDORSEMENT**

In consideration of the premium charged, the subscribing Insurer hereto, hereinafter referred to as the “Insurer,” does severally, but not jointly, agree to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of this Binder and any Endorsements hereto, provided that:

1. The collective liability of the subscribing “Insurer” shall not exceed its percentage of the Limit of Liability or any appropriate Sub-limit of Liability or any aggregate Limit of Liability in any Policy Year.

2. The limit of the subscribing “Insurer” shall not exceed the Limit of the pro-rata percentage of Liability set against its name.

| “Insurer” | Everest Indemnity Insurance Company |
|---|---|
| “Insurer” Policy Number/Reference | A. CA3P006695-211 |
| “Insurer” Participation | A. 30% being $3,000,000 part of $10,000,000 |
| Underlying Insurance Limit | A. $0 |
| “Insurer” Premium | A. $450,000 part of $1,500,000 layer premium |

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy, except as hereinabove set forth.

Everest Indemnity Insurance Company
477 Martinsville Road
P.O. Box 830 Liberty Corner, NJ 07938-0830
1-800-438-4375

EVEREST
Everest Re Group, Ltd.

# AMENDATORY ENDORSEMENT No. 2

**Named Insured: The School Board of Volusia County**

**Policy Number: CA3P006695-211** **Effective Date: 05/01/2021**

In consideration of the premium charged it is hereby understood and agreed that the Coverage Territory for this policy as amended as follows:

Coverage under this policy applies to **Occurrences** within the United States of America.

All other Terms and Conditions remain unchanged.

President

Authorized Representative

 Copyright Everest Reinsurance Company, 2017 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM – CERTIFIED AND NONCERTIFIED ACTS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| FL | Property |
| | |
| | |
| | |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following Definitions are added:

**1. Certified Act Of Terrorism**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**2. Noncertified Act Of Terrorism**

"Noncertified act of terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

 Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; and

**c.** That are not certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.

**B.** The following Exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by any "certified act of terrorism" or “noncertified act of terrorism”. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exceptions to the exclusion in Paragraph **B.** apply only if indicated and as indicated in the Schedule of this endorsement.

**1.** If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Time Element Coverage, Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury

**2.** If a "noncertified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Time Element Coverage, Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion


Copyright, Everest Reinsurance Co., 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# METHOD OF CLAIM NOTICE AND SERVICE OF SUIT CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY MANUSCRIPT POLICY

**AA. METHOD OF CLAIM NOTICE**

Under all of the coverages of this policy, notice of claim or circumstances which may reasonably be expected to give rise to a claim hereunder shall be given in writing to, and at the address for the Claims Organization shown in the Declarations. If no Claims Organization is shown in the Declarations, such notice shall be given in writing to Everest Indemnity Insurance Company, PO Box 830, Liberty Corner, NJ 07938-0830.

**BB. SERVICE OF SUIT**

It is agreed that in the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at your request will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Everest Indemnity Insurance Company, PO Box 830, Liberty Corner, NJ 07938-0830 or his or her representative, and that in any suit instituted against us upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.


Copyright, Everest Reinsurance Company, 2017
Includes copyrighted material of Insurance Services Office, Inc., used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# FLORIDA AMENDATORY ENDORSEMENT – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL PROPERTY MANUSCRIPT POLICY
PINNACLE PROPERTY COVERAGE FORM

The following cancellation and nonrenewal provision applies and supersedes any similar provision to the contrary.

**Cancellation and Nonrenewal**

**I. Cancellation**

1. You may cancel this policy by providing us with an advance, written request for cancellation stating when the cancellation shall take effect; or by remitting the original policy, or by remitting a lost or retained policy release, signed by the First Named Insured or authorized representative.

2. Cancellation For Policies In Effect 90 Days Or Less

   a. If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

      i. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      ii. 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

         (1) A material misstatement or misrepresentation; or

         (2) A failure to comply with underwriting requirements established by the insurer.

   b. We may not cancel:

      i. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

      ii. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

 Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc., used with its permission. 

3. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

   The cancellation will be effective even if we have not made or offered a refund.

4. Cancellation For Policies In Effect For More Than 90 Days

   a. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

      i. Nonpayment of premium;

      ii. The policy was obtained by a material misstatement;

      iii. In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

      iv. There has been a substantial change in the risk covered by the policy;

      v. The cancellation is for all insureds under such policies for a given class of insureds;

      vi On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

      vii On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

      viii. The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

      i. 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

      ii. 45 days before the effective date of cancellation if:


Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

(1) Cancellation is for one or more of the reasons stated in Paragraphs 4.a.ii. through 7.a.vii. above, and this policy does not cover a residential structure or its contents; or

(2) Cancellation is based on the reason stated in Paragraph 4.a.viii. above;

iii. 120 days before the effective date of cancellation if:

(1) Cancellation is for one or more of the reasons stated in Paragraphs 4.a.ii. through 7.a.vii. above; and

(2) This policy covers a residential structure or its contents.

c . If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**II. Nonrenewal**

1. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

   a. 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph II.5.; or

   b. 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

   a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   b. On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

      i. The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

      ii. You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

   c. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.


Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

4. Notwithstanding the provisions of Paragraph II.3., we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we non-renew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

5. Notwithstanding the provisions of Paragraph II.3., we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**III. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

1. The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

   a. Except as provided in Paragraph III.1.b., we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

   b. We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

      i. Nonpayment of premium;

      ii. Material misstatement or fraud related to the claim;

      iii. We determine that you have unreasonably caused a delay in the repair of the structure; or

      iv. We have paid the policy limits.

   If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph b.(2), b.(3) or b.(4), we will give you 45 days' notice.

2. With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

3. With respect to Paragraph III.2., a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.


Copyright, Everest Reinsurance Company, 2019
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

# StarStone Specialty Insurance Company

**Company Address:**

Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
(201) 743-7700
www.corespecialty.com

**To Report a Claim:**

Contact the Company at (201) 743-7700 or send an email to: claims@corespecialty.com

**To File a Complaint**

Contact your Insurance Agent, or
Contact the Company at (201) 743-7700 or
Contact your State Director of Insurance

# SURPLUS LINES POLICYHOLDER NOTIFICATION

## STATE OF FLORIDA

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER. SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

StarStone
Part of the Core Specialty Group

Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.starstone.com

# STARSTONE SPECIALTY INSURANCE CO.

**FOLLOW FORM GENERAL PROPERTY DECLARATIONS**
This Declaration Page is attached to and forms part of the Policy as defined herein.

**Policy Number: E80402210CSP** **Renewal Of: NEW**

**POLICY PERIOD:**
Effective Date: 05/01/2021 Expiration Date: 05/01/2022
(12:01 A.M. Standard Time at the address of the Named Insured as stated herein)

| | |
|---|---|
| **Named Insured and Mailing Address:** | School Board of Volusia County<br>PO Box 2118<br>Deland, FL 32721 |
| **Producer Named and Address:** | Thomas Rhodes<br>MacDuff Underwriters<br>1717 North Clyde Morris Boulevard, Suite 120<br>Daytona Beach, FL 32117 |
| **Description of Operations:** | **Schools** |

## Property Insurance

---

In return for the payment of the premium, and subject to all the terms of this policy, we agree to provide you with the insurance as stated in this policy.

**PREMIUM and FEES:**
This policy consists of the following coverage for which premium is indicated. This premium may be subject to adjustment:

| | |
|---|---|
| Commercial Property Coverage: | $300,000.00 |
| TRIA: | $REJECTED |
| Inspection Fee: | $N/A |
| TOTAL: | $300,000.00 |

**Minimum Earned Premium:** 35%

**Forms and Endorsements:** See attached Schedule of Forms and Endorsements, CSI-CPN-202-0720

StarStone
Part of the Core Specialty Group

Harborside 5
185 Hudson Street, Suite 2600
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.starstone.com

**Primary Insurance Company:**
**Name of Insurer:** N/A
**Policy Number:** N/A
**Limit of Liability:** N/A

**Issuing Company:** StarStone Specialty Insurance Company

**Total Insured Values:** $1,694,975,135 per schedule on file with the Company

**Perils Insured:** All Risk of direct physical loss or damage including Flood and Earthquake as defined in Primary Policy

**Property Covered:** Real and Personal Property
Business Interruption – Gross Earnings/Extra Expense
and as more fully defined in the policy form as defined in Primary Policy

**Total Limit of Liability applicable to this policy**: $2,000,000 (being 20%) part of $10,000,000 per occurrence except; Annual Aggregate Limit for Flood and Earthquake as well as other applicable sublimits

**THESE DECLARATIONS, ALL INFORMATION AND MATERIALS MADE AVAILABLE BY OR ON BEHALF OF THE INSUREDS DURING THE UNDERWRITING PROCESS FOR THIS POLICY OR OTHERWISE INCLUDED WITHIN THE DEFINITION OF APPLICATION IN THE FOLLOWED POLICY, AND THIS POLICY FORM INCLUDING ATTACHED ENDORSEMENTS CONSTITUTE THE INSURANCE POLICY. (“Policy”)**

09/14/2021
__________________________
Date of Issuance

________________________________________
Authorized Representative

StarStone

Part of the Core Specialty Group

# FORMS AND ENDORSEMENTS SCHEDULE

The following Parts all attach to and form a part of this policy.

| FORM NUMBER | FORM NAME |
|---|---|
| CSI-CPN-201-0720 | Cover Page |
| CSI-CSN-810-0421 | Surplus Lines Policyholder Notification - Florida |
| CSI-CPD-102-0720 | Manuscript Declarations |
| CSI-CPN-202-0720 | Forms and Endorsement Schedule |
| CSI-CPN-203-0720 | Policy Holder Notification - Fraud Notice |
| CSI-CPN-204-0720 | Policy Holder Notification - OFAC |
| CSI-CPN-205-0720 | Notice of Claims Reporting |
| CSI-CPN-206-0720 | Notice of Privacy Policies and Practices |
| | Manuscript Form |
| CSI-CPE-003-0720 | Asbestos Coverage Endorsement |
| CSI-CPE-004-0720 | Mold, Mildew, and Fungi Exclusion Endorsement |
| CSI-CPE-005-0720 | Pollution Endorsement (Sublimited) |
| CSI-CPE-006-0720 | Minimum Earned and Wind Minimum Earned Premium Endorsement |
| CSI-CPE-007-0720 | Equipment Breakdown Exclusion |
| CSI-CPE-010-0720 | Terrorism Exclusion Endorsement |
| CSI-CPE-032-0720 | Exclusion of Loss Due to Virus and Other Microorganisms Endorsement |
| CSI-CPE-033-0720 | Nuclear, Biological, Chemical, and Radiological Exclusions Endorsement |
| CSI-CPE-034-0720 | War or Warlike Action Exclusion Endorsement |
| CSI-CPE-035-0720 | Cyber, Electronic, Data, and Systems Exclusion Endorsement |
| CSI-CPE-037-0321 | Service of Suit Endorsement |
| CSI-CPE-039-0720 | TRIA Rejection |

StarStone
Part of the Core Specialty Group

# POLICYHOLDER NOTIFICATION
# FRAUD NOTICE

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

StarStone

Part of the Core Specialty Group

| | |
|---|---|
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Oregon** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in Prison. The aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |

StarStone

Part of the Core Specialty Group

| | |
|---|---|
| | **Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | All Commercial Insurance, Except As Provided for Workers' Compensation It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>Workers' Compensation: It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | Workers' Compensation: Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |

StarStone

Part of the Core Specialty Group

# POLICY HOLDER NOTIFICATION

## U.S. Treasury Department's Office of Foreign Assets Control ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

**PLEASE READ THIS NOTICE CAREFULLY**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

StarStone
Part of the Core Specialty Group

**NOTICE OF CLAIMS REPORTING PROCEDURES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

All claims should be reported per the below:

Email: claims@corespecialty.com

Or

Phone: (201) 743-7700

Please have the following information available:
1. Insured Name
2. Policy Number
3. Date of Loss
4. Location of Loss
5. Detailed description of the loss event

All other terms and conditions of this Policy remain unchanged.

ACORD

# PROPERTY LOSS NOTICE

DATE (MM/DD/YYYY): 09/21/2021

| | |
|---|---|
| AGENCY: Brown & Brown of Florida, Inc.<br>P.O. Box 2412<br>Daytona Beach FL 32115-2412 | INSURED LOCATION CODE: |
| | DATE OF LOSS AND TIME: 09/10/2021 12:00 ☒ AM ☐ PM |
| CONTACT NAME: Stephanie Stanulewich | **PROPERTY / HOME POLICY** |
| PHONE (A/C, No, Ext): (386) 239-8872 | CARRIER: StarStone Specialty Insurance Company — NAIC CODE: |
| FAX (A/C, No): | POLICY NUMBER: E80402210CSP — LINE OF BUSINESS: |
| E-MAIL ADDRESS: sstanulewich@bbdaytona.com | **FLOOD POLICY** |
| CODE: — SUBCODE: | CARRIER: — NAIC CODE: |
| AGENCY CUSTOMER ID: 00074896 | POLICY NUMBER: |
| | **WIND POLICY** |
| | CARRIER: — NAIC CODE: |
| | POLICY NUMBER: |

## INSURED

| | |
|---|---|
| NAME OF INSURED (First, Middle, Last): School Board of Volusia County | INSURED'S MAILING ADDRESS: PO BOX 2118<br>DELAND FL 32721 |
| DATE OF BIRTH: — FEIN (if applicable): — MARITAL STATUS / CIVIL UNION (if applicable): | |
| PRIMARY PHONE #: ☐ HOME ☒ BUS ☐ CELL — SECONDARY PHONE #: ☒ HOME ☐ BUS ☐ CELL | PRIMARY E-MAIL ADDRESS: easwallo@volusia.k12.fl.us |
| | SECONDARY E-MAIL ADDRESS: |
| NAME OF SPOUSE (First, Middle, Last) (if applicable): | SPOUSE'S MAILING ADDRESS (if applicable): |
| DATE OF BIRTH: — FEIN (if applicable): — MARITAL STATUS / CIVIL UNION (if applicable): | |
| PRIMARY PHONE #: ☐ HOME ☒ BUS ☐ CELL — SECONDARY PHONE #: ☒ HOME ☐ BUS ☐ CELL | PRIMARY E-MAIL ADDRESS: |
| | SECONDARY E-MAIL ADDRESS: |

## CONTACT

☒ CONTACT INSURED

| | |
|---|---|
| NAME OF CONTACT (First, Middle, Last): Beth Swallows | CONTACT'S MAILING ADDRESS: |
| PRIMARY PHONE #: ☐ HOME ☒ BUS ☐ CELL (386) 734-7190 20300 — SECONDARY PHONE #: ☐ HOME ☐ BUS ☐ CELL | |
| WHEN TO CONTACT: | PRIMARY E-MAIL ADDRESS: easwallo@volusia.k12.fl.us |
| | SECONDARY E-MAIL ADDRESS: |

## LOSS

| | |
|---|---|
| LOCATION OF LOSS<br>STREET: 100 Wolf Pack Run | POLICE OR FIRE DEPARTMENT CONTACTED: |
| CITY, STATE, ZIP: Deltona FL 32725 | REPORT NUMBER: |
| COUNTRY: | |
| DESCRIBE LOCATION OF LOSS IF NOT AT SPECIFIC STREET ADDRESS: | |
| KIND OF LOSS: ☐ FIRE ☐ THEFT ☐ LIGHTNING ☐ HAIL ☐ FLOOD ☐ WIND ☒ Property | PROBABLE AMOUNT ENTIRE LOSS: |

DESCRIPTION OF LOSS & DAMAGE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Insured noticed a crack in Building 10 and the sidewalk outside the building/See remarks

| | |
|---|---|
| REPORTED BY: Beth Swallows | REPORTED TO: Stephanie Stanulewich |


© 1988-2019 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

StarStone

Part of the Core Specialty Group

# NOTICE OF OUR PRIVACY POLICIES AND PRACTICES

This Notice has been prepared to inform you that we do not disclose and we reserve no right to disclose to our affiliates or to nonaffiliated third parties, your nonpublic personal information, which we collect and maintain except with your permission or as permitted by law.

**Information we collect and maintain:** We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications, at your request or otherwise;
- Information we obtain from your transactions with us, our affiliates or others;
- Information we receive from consumer-reporting agencies.

**Information we may disclose:** We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

**How we protect information:** Except as otherwise described in this Notice, we restrict access to your nonpublic personal information to our employees who need to know to provide our products and services to you and as permitted by law. We maintain physical, electronic, and procedural safeguards that comply with applicable legal requirements to guard your nonpublic personal information. We have installed usernames, passwords and other safety features on our web applications to help ensure that the information you provide remains safe and secure.

**Changes to this Notice:** We may amend our privacy policies and practices at any time, and we will inform you of any material changes as required by law.

**YOU DO NOT NEED TO DO ANYTHING IN RESPONSE TO THIS NOTICE**

**THIS NOTICE IS MERELY TO INFORM YOU ABOUT OUR**

**PRIVACY POLICIES AND PRACTICES**

**MANUSCRIPT DOMESTIC PROPERTY POLICY**

**SECTION I – COVERAGES AND LIMITS OF LIABILITY**

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A. NAMED INSURED: First Named Insured and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

B. MORTGAGEES, LOSS PAYEES, AND ADDITIONAL INSUREDS: Per Certificates on File with the Company.

C. COVERAGE TERRITORY: Coverage under this Policy applies to **Occurrences** within the United States, its territories and possessions, Puerto Rico, and Canada, including their respective coastal waters.

D. LIMIT OF LIABILITY ("Policy Limit"): This Company's maximum liability in any one Occurrence as a result of all covered loss or damage regardless of the number of Locations, coverages, or perils insured under this Policy shall not exceed:

**$2,000,000 PART OF $10,000,000**

E. SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are subject to and not in addition to the **Policy Limit** shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence** unless otherwise indicated.

**If the words, NOT COVERED are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.**

1. Earth Movement:

a. $ 25,000,000 Annual Aggregate

Subject to the Annual Aggregate Limit for all Earth Movement shown in Subparagraph E.1.a. above:

b. NOT COVERED Annual Aggregate for all Earth Movement in all of the following states combined: California, Alaska, Hawaii, and Puerto Rico

c. NOT COVERED Annual Aggregate for Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.)

d. NOT COVERED Annual Aggregate for New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.)

2. Flood:

a. $ 25,000,000 Annual Aggregate

b. $ 25,000,000 Subject to the Annual Aggregate Limit for all Flood shown in Subparagraph E.2.a. above, the Annual Aggregate as respects Flood for Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

3. Named Storm: $100,000,000 Regardless of the number of Coverages, Locations or Perils involved including, but not limited to, all Flood (however caused), wind, wind gusts, storm surges, tornados, cyclones, hail, or rain, the maximum amount the Company will pay per Occurrence as respects all covered Loss or Damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression). In the event covered Loss or Damage by Flood arises out of a Named Storm, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Flood shall be the Sublimits of Liability for Flood as shown in Subparagraphs E.2.a. and E.2.b. above. However, if Flood is not covered, the maximum amount the Company will pay per Occurrence for all such Loss or Damage by Named Storm shall exclude Loss or Damage by Flood.

4. Debris Removal: The Company's total liability for Debris Removal per Occurrence for all Insured Locations sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

a. 25 % of the amount of covered direct physical loss or damage payable for all Insured Locations; or

b. $ 1,000,000

5. Accounts Receivable: $ 250,000

6. Civil or Military Authority: 30 Days, but in no event will the Company pay more than $ NOT APPLICABLE

7. Contingent Time Element: $ 1,000,000

8. Demolition & Increased Cost of Construction: (See Section VI – Additional Coverages, Paragraph C.)

a. Demolition Coverage A: INCLUDED
b. Demolition Coverage B: $5,000,000
c. Demolition Coverage C: $5,000,000

9. Electronic Data and Media: $ 250,000

10. Equipment Breakdown: $ NOT COVERED

11. Spoilage: $ 250,000

12. Errors and Omissions: $ 100,000, Subject to all other sublimits contained herein.

13. Extended Period of Indemnity: 180 Days

14. Extra Expense: $ 10,000,000

15. Fine Arts: $ 1,000,000

16. Fire Brigade Charges: $ 2,500

17. Ingress/Egress Coverage: 30 Days, but in no event will the Company pay more than $ 2,500,000

18. Leasehold Interest: $ 1,000,000

19. Limited Pollution Coverage: $ 50,000 Annual Aggregate

20. Miscellaneous Unnamed Locations: $ 5,000,000, Subject to all other sublimits contained herein.

21. Newly Acquired Property: 90 Days, but in no event will the Company pay more than $ 1,000,000 Subject to all other sublimits contained herein.

22. Ordinary Payroll: NOT COVERED Days

23. Professional Fees: $ 1,000,000

24. Service Interruption: $10,000,000. Insured physical loss or damage must occur within One (1) state mile from the insured's premises for coverage to apply. A qualifying period of 24 hours applies to this coverage.

25. Transit: $100,000, but no more than $25,000 per Conveyance

26. Valuable Papers and Records: $ 1,000,000

F. MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s),

2. As respects each Location insured by this Policy, one-hundred (100%) percent of the total combined stated values for all categories of Insured Property (e.g. building, contents) and other covered exposures (e.g., time element, extra expense, rental loss) shown for that Location on the latest Statement of Values or other documentation on file with the Company, or

3. The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

G. DEDUCTIBLE: Each claim for loss or damage under this policy shall be subject to a per occurrence deductible amount of $100,000, except $25,000 for Automobile Physical Damage & Inland Marine, unless a specific deductible shown below applies:

1. Flood:

   a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.1.b.:

   b. 3% of Total Insurable Values (TIV) at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ 500,000 any one Occurrence as respects Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA).

2. Earth Movement:

   a. $ 100,000 Per Occurrence, except as follows in Subparagraph G.2.b, G.2.c., or G.2.d.:

   b. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in California, Hawaii, Alaska, and Puerto Rico;

   c. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the Pacific Northwest Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.1.);

   d. NOT COVERED of Total Insurable Values at the time of the loss at each Location involved in the loss or damage, subject to a minimum of $ NOT COVERED any one Occurrence as respects Locations in the New Madrid Earthquake Zone Counties (See Section VIII – Policy Definitions, Subparagraph E.2.

3. Windstorm or Hail:

   a. $ 100,000 Per Occurrence, except as follows:

   b. 3% of Total Insurable Values (TIV) "Per Building" at the time of the loss at each location involved in the loss or damage arising out of a Named Storm (a storm that has been declared by the National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression), regardless of the number of Coverages, Locations, or Perils involved (including but not limited to, all Flood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain) and subject to a minimum of $500,000 any one occurrence;

4. Time Element: NOT APPLICABLE Days

The following two paragraphs apply to Subparagraphs G.1. through G.4, inclusive:

In each case of loss or damage covered by this Policy, the Company shall not be liable unless the Insured sustains loss or damage in a single Occurrence greater than any applicable deductible described herein and then, if this is a quota share Policy, only for the Company's share in excess of such deductible. When this Policy covers more than one Location, the deductible shall apply against the total loss or damage covered by this Policy in any one Occurrence, unless otherwise stated in this Paragraph G.

If two or more deductible amounts provided in this Policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in this Policy. However, if:

1. The Time Element deductible and another deductible apply to a single **Occurrence**, then the Company shall apply both deductibles to the **Occurrence**; and

2. Covered Loss or Damage by **Flood** arises out of a Named Storm, then the Company shall apply the **Flood** deductible set forth in Subparagraph G.1. or the Named Storm deductible set forth in Subparagraph G.3.b., whichever is greater.

**SECTION II – COVERED CAUSES OF LOSS**

A. PERILS INSURED: This Policy insures against all risks of direct physical loss or damage to Insured Property, except as excluded.

B. PERILS EXCLUDED:

1. The Company does not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a Covered Cause of Loss. However:

      i. If fire not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

      ii. This Policy does insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the Insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the Insured premises.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

      (1) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

      (2) By military, naval, or air forces; or

      (3) By an agent of any such government, power, authority, or force;

      ii. Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

      iii. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

Including any consequence of Subparagraphs b.i., b.ii., or b.iii. above.

c. Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured, or others listed above without the knowledge of the Insured is covered.

d. Asbestos material removal, except asbestos that itself incurs direct physical loss or damage caused by a Defined Peril at the Insured Location.

e. The actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any Covered Cause of Loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to Insured Property arising out of seepage, contamination, or pollution caused by a Defined Peril at the Insured Location.

f. Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

g. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

h. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy shall cover only such ensuing damage.

i. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing damage.

j. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an Occurrence away from the Location(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

k. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

l.

i. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

ii. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

iii. Loss of use or functionality, whether partial or entire, of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

This exclusion shall not apply to any ensuing physical damage, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

m. Error or omission in Electronic Data and Media machine programming or instructions, including, loss attributable to program design constraints, networking compatibility and original business applications.

n. The failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

i. correctly recognizes any date as its true calendar date;

ii. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than its true calendar date; and/or

iii. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command, which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

It is further understood that the Insurer will not pay for the repair of modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

It is further understood that the Insurer will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in a. above.

Such Damage or Consequential Loss described in a., b., or c. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This exclusion shall not apply to any subsequent damage or consequential loss, not otherwise excluded, which itself results from a Defined Peril at the Insured Location.

o. Fungus, Mold(s), Mildew, Spores or Yeast; or any spores or toxins created or produced by or emanating from such Fungus, Mold(s), Mildew, Spores or Yeast.

p. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, this Policy will cover only such ensuing loss or damage.

q. Loss or damage arising out of:

i. Building or any part of a building that is in danger of falling down or caving in,

ii. Any part of a building that has separated from another part of the building, or

iii. A building or any part of a building that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

However, the Company does cover loss or damage arising out of Collapse.

r. Equipment Breakdown to vehicles or any equipment on vehicles, draglines, or excavation or construction equipment.

s. Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in Section I. Subparagraph E.

2. The Company does not insure for loss or damage caused by any of the following:

a. Delay, loss of market, or loss of use.

b. Indirect, remote, or consequential loss or damage.

c. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

d. Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses, or any other similar act.

**SECTION III – INSURED PROPERTY**

A. INSURED PROPERTY: Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

1. Real property, including new buildings and additions under construction at an Insured Location, and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real property;

3. Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Personal property of others in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against under this Policy;

5. Contractor’s and vendor’s interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any time element coverage provided by this Policy.

B. PROPERTY EXCLUDED: This Policy does not insure against loss or damage to:

1. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2. Land, land values, any substance in or on Land, or any alteration to the natural condition of the Land;

3. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4. Standing timber, growing crops, plants, lawns, trees, shrubs, or animals;

5. Drainage systems, pavements or roadways;

6. Vehicles licensed for highway use, watercraft, aircraft, and railroad rolling stock;

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts, any mining equipment or mining property located below the surface of the ground;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft while on the launch pad, or after time of launch;

12. Dams, dikes, bridges, tunnels, reservoirs and canals;

13. Docks, piers and wharves;

14. Transmission and distribution lines of every type and description; except when located on the Insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire.

**SECTION IV – VALUATION**

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraph B. through M., inclusive, below: Adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss.

B. Stock in process will be valued at the cost of raw materials and labor expended plus the proper proportion of overhead charges.

C. Finished goods manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. Raw materials, supplies and other merchandise not manufactured by the Insured will be valued at the replacement cost.

E. Valuable Papers and Records will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

F. Electronic Data and Media will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the value of the blank media.

G. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties, the replacement cost if replacement cost values have been reported to the Company and if actually replaced; otherwise the actual cash value with proper deduction for depreciation and obsolescence; [but not to exceed the cost to repair or replace the property with material of like kind and quality].

H. Leasehold improvements and betterments will be valued as follows;

1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments;

2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost:

   The Company will determine the proportionate value as follows:

   a. Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

   b. Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

   If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3. Nothing if others pay for repairs or replacement.

I. Fine Arts will be valued as follows:

1. If there is no Agreed Value on file with the Company, then the lesser of:

   a. The cost to repair or replace the fine art, or

   b. The appraised value which will be determined as of the time of the loss.

2. If there is an Agreed Value on file with the Company, then the Agreed Value on file with the Company.

J. Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1. Any collection expenses over and above the normal collection costs;

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K. Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

1. The cost to repair or replace the damaged property, or

2. The price at which the property is offered for sale less the market value of the **Land**.

L. Property in Transit: In case of loss, the basis of adjustment shall be:

1. Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2. Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder) is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3. Property of others not under invoice shall be valued at the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

4. Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value applies.

With respect to Subparagraph A. through M., inclusive, unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss.

**SECTION V – TIME ELEMENT COVERAGE**
**GROSS EARNINGS**

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

    a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

    b. For mercantile or non-manufacturing operations: The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

    c. Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

    a. normal operations resume, or

b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

a. To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

b. To replace physically damaged or destroyed mercantile stock necessary to resume operations.

c. To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

1. Required for restaffing or retraining employees, or

2. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above, or

3. Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this Policy.

C. ADDITIONAL TIME ELEMENT COVERAGES

1. EXTRA EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Insured Property utilized by the Insured. Extra Expense means:

a. The reasonable and necessary Extra Expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured’s business; and

b. The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2. RENTAL VALUE: As respects Insured Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

   Rental Value means the sum of:

   a. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

   b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

   c. The fair rental value of any portion of such property which is occupied by the Insured.

   Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3. ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party.

4. SOFT COSTS: For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during Period of Interruption (described in Section V., Paragraph B. above). Such Soft Costs must be attributable to the loss.

   The Company will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs means:

   a. The amount of actual interim or construction financing interest, including loan fees and other onetime charges incurred to negotiate a new construction loan and/or extend the existing one;

   b. Realty taxes and ground rent if any;

   c. Advertising and promotional expenses;

   d. Cost of additional commissions;

   e. Architects, surveyors, legal, consulting engineers, or other fees not otherwise covered under this Policy;

   f. Project administration expense, but not including development fees;

   g. Insurance premiums; and

   h. Finder's fee refunds.

5. CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

a. wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured, or

b. wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property. The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Insured Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the COVERAGE TERRITORY.

6. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's real or personal property is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I., Subparagraph E.6. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.6.

7. INGRESS & EGRESS: This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I., Subparagraph E.17. In no event shall the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

8. EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

a. the date on which the liability of the Company for loss or damage would otherwise terminate; or

b. the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in Section I., Subparagraph E.13. starting with later of a. or b. above. This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

With respect to Section V., Subparagraphs C.6. and C.7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Company will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D. ADDITIONAL EXCLUSIONS: Section V – Time Element Coverage does not cover:

1. IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a Covered Cause of Loss to which this coverage applies;

2. REMOTE LOSS –

    a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order,

    b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature, or

    c. Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises,

Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this Section V;

3. FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction;

4. TRANSIT - Any loss resulting from loss or damage to property in transit.

**SECTION VI – ADDITIONAL COVERAGES**

The following additional coverages are subject to the terms and conditions of this Policy, including, the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the Earth Movement, Flood, or Named Storm Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1. Any collection expenses over and above the normal collection costs.

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the Insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable

is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the Insured Locations of debris of Insured Property remaining as a result of direct physical loss or damage insured against under this Policy when the Insured gives written notice of such direct physical loss or damage to the Company, no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the Pollutant or Contaminant therein or thereon, whether or not the contamination results from an insured event.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay:

1. Under Demolition Coverage A: For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building;

2. Under Demolition Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property;

3. Under Demolition Coverage C: For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced;

The Company shall not be liable for any cost of demolition or increased cost of replacement, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

D. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to Electronic Data and Media.

E. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to;

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

   a. Include any Location of the Insured at the inception of the Policy; or

   b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly acquired location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values after a covered loss.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Company when discovered.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or Miscellaneous Unnamed Locations provisions of this Policy.

F. FINE ARTS: This Policy is extended to cover direct physical loss or damage to fine arts. However, no coverage is provided for:

1. Breakage of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture; antique jewelry or similar fragile articles, unless such breakage is caused by a Defined Peril at the Insured Location; or

2. Loss or damage as a result of restoring, repairing, or retouching processes.

G. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES: This Policy covers the following expenses resulting from a Covered Cause of Loss:

1. Fire brigade charges and any extinguishing expenses which the Insured incurs;

2. Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

H. LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an Insured Location. No sublimit of liability applies to this additional coverage, but in no event, will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

I. LEASEHOLD INTEREST: If Insured Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Insured Property is located, then this Policy is extended to cover The Interest of the Insured as Lessee or The Interest of the Insured as Lessor, whichever is applicable, but only for the first three months succeeding the date of the loss and the Net Lease Interest shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1. The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2. Improvements and betterments to real property which are not covered under any other section of this Policy; and

3. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions: The following terms, wherever used in this section shall mean:

1. The Interest of the Insured as Lessee is defined as:

    a. the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

    b. the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2. The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3. Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this additional coverage.

J. LIMITED POLLUTION COVERAGE: This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of Pollutants or Contaminants from Land or water at an Insured Location when such Land or water is contaminated or polluted due to a Covered Cause of Loss at the Insured Location. There will be no coverage unless such expenses are reported to the Company within 180 days after the date of such Covered Cause of Loss.

K. NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy. Coverage under this additional coverage ceases at the earlier of the following dates:

1. Ninety (90) days from the date of acquisition or lease of such property or such other number of days shown in Section I for Newly Acquired Property, if applicable, or

2. When the newly acquired location is bound by the Company; or

3. The Company notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Miscellaneous Unnamed Locations provisions of this Policy.

L. PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

No sublimit of liability applies to this additional coverage.

M. PROFESSIONAL FEES: This Policy is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the insured's business in order to determine the amount of loss payable under this policy. This Policy is extended to include reasonable and necessary fees charged by the Property Manager for handling the claim.

There shall be no coverage under this policy for expenses incurred by the Insured in utilizing the services of Attorneys, Public Adjusters, Insurance Agents or Brokers, or any of their subsidiary, related or associated entities. This Policy also excludes any fees or costs for consultation on coverage or negotiation of claims, and the costs or expenses of overhead or operating expenses of any Insured, including salaries of such Insured's employees.

N. PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any Location within the Coverage Territory when removed from the Insured Locations for the purpose of being repaired or serviced, excluding:

1. Personal property insured under another Policy or floater;
2. Personal property excluded under this Policy; or
3. Personal property removed from the Insured Locations for normal storage or processing or preparation for sale or delivery.

O. SERVICE INTERRUPTION: This Policy is extended to cover physical loss or damage to Insured Property and/or Time Element Coverage arising from a Covered Cause of Loss to: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, all situated outside the Insured Locations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I., Subparagraph E.24. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines is restored.

The Sublimit set forth in Section I., Subparagraph E.24. applies to all loss or damage to Insured Property and Time Element Coverage combined arising out of one Service Interruption. None of the Additional Time Element Coverages set forth in Section V., Paragraph C. apply to the Time Element Coverage provided herein.

P. SPOILAGE: This Policy is extended to cover spoilage as a direct result of a Covered Cause of Loss. The Company shall be liable for direct physical loss or damage to:

1. Perishable goods due to spoilage; or

2. Perishable goods due to contamination from the release of refrigerant including, but not limited to, ammonia.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have applied. Otherwise payment will be determined in accordance with Section IV – Valuation of this Policy.

Perishable goods means personal property:

1. Maintained under controlled conditions for its preservation, and

2. Susceptible to loss or damage if the controlled conditions change.

Q. TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1. Personal property shipped to customers on F.O.B., C & F, or similar terms. The Insured's contingent interest in such shipments is admitted.

2. The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured.

3. Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage;

1. Samples in the custody of salespersons or selling agents.

2. Property insured under import or export ocean cargo policies.

3. Waterborne shipments via the Panama Canal or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

4. Shipments made by air unless via regularly scheduled airlines.

5. Property shipped by mail.

6. Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

7. Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts. The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

R. VALUABLE PAPERS AND RECORDS: This Policy is extended to cover Valuable Papers and Records.

**SECTION VII – CONDITIONS**

A. ABANDONMENT: There can be no abandonment to the Company of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations, and duties under this Policy. Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

D. ASSIGNED ADJUSTER: It is hereby agreed that the following shall be designated as the ACCOUNT CLAIM ADJUSTER for all claims reported under this policy provided that he/she agrees to be subject to and fully comply with the Carrier (s) "Claim Handling Guidelines for Independent Adjusters Protocol". The ACCOUNT CLAIM ADJUSTER may not re-assign any claim(s) without the prior approval of the Company.

Carrier (s) reserves the right to associate a staff adjuster with the ACCOUNT CLAIM ADJUSTER as respects any claim or claims. Carrier (s) retains the right to terminate the below named ACCOUNT CLAIM ADJUSTER for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the company. In such event, or in the event that the below named ACCOUNT CLAIM ADJUSTER becomes unwilling or unable to perform, a replacement ACCOUNT CLAIM ADJUSTER will be selected by the mutual agreement of the Company and Named Insured.

Adjuster Name: NOT APPLICABLE

Adjusting Firm: NOT APPLICABLE

E. ASSIGNMENT: The Insured may not assign this Policy without the Company's prior written consent.

F. BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G. CANCELLATION:

1. This Policy can be canceled by the First Named Insured by providing the Company with:

   a. An advanced written request for cancellation stating when the cancellation shall be effective, and

   b. The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2. This Policy may be canceled by the Company by giving to the Insured at least SIXTY (60) days written notice of cancellation or in the case of non-payment of premium, at least ten (10) days' written notice of cancellation. Such notice may be accompanied with the unearned premium, or if not included, the Company shall return the unearned premium upon demand by the First Named Insured.

3. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. If this Policy is canceled, the Company will send the First Named Insured any premium refund due. If the Company cancels, the refund will be pro rata. If the First Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown on the Declarations. The cancellation will be effective even if the Company has not made or offered a refund.

H. CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I. CURRENCY: Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the country in which the property is located. However, if the risk is located in a country other than the United States or Canada, then the Limits of Liability, Deductibles and Premiums specified shall be in United States funds.

J. DIVISIBLE CONTRACT: Subject to Condition L., if the **Locations** described in this Policy include two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage occurring in any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K. INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

M. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

N. PROTECTION AND PRESERVATION OF PROPERTY:

In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this Policy, but shall be subject to the applicable deductible, sublimit of liability and the **Policy Limit**.

O. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

P. REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1. Give prompt written notice of any loss or damage to the Company,

2. Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority,

3. Protect the property from further loss or damage,

4. Separate the damaged and undamaged personal property,

5. Maintain such property in the best possible order, and

6. Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed,

7. Furnish all other documents or insurance policies that the Company may reasonably require,

8. Allow the Company to access and inspect any of the damaged or undamaged property, and

9. Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1. The time and origin of the loss,

2. The interest of the Insured and of all others in the property,

3. The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon,

4. All other contracts of insurance, whether collectible or not, covering any of said property, and

5. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

Q. REVIEW OF VALUES: The Insured shall provide this Company at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all Insured **Locations**.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**. The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an Actual Cash Value basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values. Time Element values (if applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Company. Receipt of said Statement of Values by this Company shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Company, or attached to this Policy.

R. SALVAGE AND RECOVERIES: All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

S. SERVICE OF SUIT: In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Carrier (s), or his or her representative, and that in any suit instituted against the Company upon this Policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this Policy of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

T. SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this Policy.

The Company shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention so to do within sixty (60) days after receipt of the proof of loss herein required.

U. SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials;
2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

V. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twenty four (24) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

W. SUSPENSION: Upon the discovery of a dangerous condition with respect to **Equipment Breakdown** to any Insured Property under this Policy, any representative of the Company may immediately suspend the insurance against loss from an Accident to such property or part thereof by giving written notice mailed or delivered to the Insured at the address of the Insured as specified in Section I, or at the location of such property. The insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this Policy. The Insured shall be allowed the return of the unearned portion of the premium paid for such suspended insurance, pro-rata for the period of suspension.

X. TERRITORIAL LIMITATIONS: Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Y. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this form (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

Z. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that, fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when it does not contain adequate Insured Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

## SECTION VIII –POLICY DEFINITIONS

A. Aircraft or Vehicle Impact means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

B. Collapse means an abrupt falling or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

C. Defined Peril means Fire; Lightning; Explosion; Windstorm; Hail; Smoke; Aircraft or Vehicle Impact; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Collapse (unless otherwise excluded under Section II – Perils Excluded, Subparagraph B.1.q.); or Leakage from Fire Protection Equipment.

D. Earth Movement means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;
2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, subsidence; and includes tsunami.

E. Earth Movement Counties: As referenced in this Policy, designated Earthquake Zones shall be defined as all Locations situated within the States or Counties as specified below;

1. Pacific Northwest Earthquake Zone Counties

   Washington: Clallum, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom

2. New Madrid Earthquake Zone Counties

   Arkansas: Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett

   Illinois: Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St Clair, Washington, Clinton, Bond Madison, Jefferson

   Indiana: Posey, Vanderburgh, Gibson, Warrick, Pike

   Kentucky: Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway

   Mississippi: Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar

   Missouri: Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St Francois, St Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne,, Reynolds, Madison, St Genevieve and Perry

   Tennessee: Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman

F. Electronic Data and Media means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

G. Equipment Breakdown means direct physical damage to Insured Property that is the direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Insured Property. The event must be one of the following:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment

H. Explosion: Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured;

1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3. Combustion gas turbines;

4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will include loss or damage arising or resulting from;

1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition;

1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2. Bursting or rupture caused by freezing;

3. Sonic shock waves, generally known as Sonic Boom;

4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

I. Fine Arts means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

Fine Arts does not mean and does not include any item which would qualify as Valuable Papers and Records.

J. Flood means, whether natural or manmade, Flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not. A tsunami shall not be considered a Flood.

K. Fungus, Mold(S), Mildew, Spores or Yeast:

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

L. Land means land except land for which values are reported and premiums are charged hereunder, such as dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such surface containment structures.

M. Leakage from Fire Protection Equipment means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the Fire Protection Equipment for the Insured Location or for any adjoining Locations;

2. Collapse or fall of tanks forming a part of the Fire Protection Equipment or the component parts or supports of such tanks.

The term Fire Protection Equipment includes tanks, water mains, hydrants, or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include;

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the Insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

N. Location means the location as specified in the Statement of Values, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear Land space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

O. Miscellaneous Unnamed Location(s) means a location that has not been included in the Statement of Values on file with the Company and has not been reported to the Company as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

P. Occurrence means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The occurrence must occur during the policy period.

If more than one event for Windstorm, Hail, Named Storm, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief, Earth Movement, Flood or Terrorism covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single Occurrence. When filing proof of loss, the Insured may elect the moment at which the 72-hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property.

Q. Pollutants or Contaminants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

R. Riot, Strike or Civil Commotion means riot and civil commotion including;

1. Acts of striking employees while occupying the Insured Location; and
2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

S. Smoke means loss or damage ensuing from a sudden and accidental release of Smoke. The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

T. Valuable Papers and Records means documents that are written, printed, or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;
2. Legal and financial agreements such as deeds and mortgages;
3. Addressograph plates; and
4. Any electrically produced data such as printouts, punched cards, tapes or discs.

Valuable Papers and Records does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

Valuable Papers and Records does not mean and does not include any item which would qualify as Fine Arts.

U. Vandalism and Malicious Mischief means willful and malicious damage to, or destruction of, Insured Property. Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

V. Windstorm or Hail: Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under these perils for:

1. Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

2. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters;

3. Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

StarStone

Part of the Core Specialty Group

# ASBESTOS COVERAGE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**ASBESTOS COVERAGE ENDORSEMENT**

This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by one of the following Listed Perils if a covered cause of loss in the policy

Fire; Explosion, Lightning, Windstorm, Hail, Direct Impact of Vehicle, Aircraft or Vessel, Riot or Civil Commotion, Vandalism or Malicious Mischief, Accidental Discharge of Fire Protective Equipment, Named Windstorm, Earthquake, and Flood.

This coverage is subject to each of the following specific limitations:

1. The building or structure containing the asbestos must be insured under this Policy for loss or damage by that Listed Peril.

2. The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3. The Insured must report to the Company the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos. However, this Policy does not insure any such damage first reported to the Insurers more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4. Insurance under this Policy in respect of asbestos shall not include any sum relating to:

   i) any faults in the design, manufacture or installation of the asbestos;
   ii) asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

5. The maximum amount that the Company will pay under this coverage endorsement in any 12 month period is $25,000

**ASBESTOS EXCLUSION**

Except as set forth above, this Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to, regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense from asbestos.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

StarStone

Part of the Core Specialty Group

# MOLD, MILDEW, AND FUNGI EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**MOLD, MILDEW, AND FUNGI EXCLUSION ENDORSEMENT**

1. Except as set forth in paragraph Clause 2 below, this Policy does not insure against any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to: mold, mildew or fungus

   This exclusion applies regardless whether there is (a) any physical loss, damage or destruction of property insured; (b) any insured peril or cause, whether or not contributing concurrently or in any sequence; (c) any loss of use, occupancy, or functionality; or (d) any action required, including but not limited to repair replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

2. Notwithstanding the foregoing, this Policy insures physical loss, damage or destruction of property insured by mold, mildew or fungus when directly caused by a Listed Peril that is a covered cause of loss under this policy occurring during the Policy Period.

**LISTED PERILS**

Fire; lightning; explosion; windstorm or hail; smoke; direct impact of vehicle, aircraft or vessel; strike, riot or civil commotion; vandalism or malicious mischief; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft, sudden and accidental discharge leakage, backup or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured “location”; “Earthquake”; “Flood.”

This coverage is subject to all the limitations in this Policy and, in addition, to each of the following specific limitations:

a. The property must otherwise be insured under this Policy for physical loss, damage or destruction by the Listed Peril.

b. The Insured must report the existence and cost of the physical loss, damage or destruction by mold, mildew or fungus to the Insurer as soon as practicable, but no later than twelve (12) months after the Listed Peril first caused physical loss, damage or destruction of insured property during the Policy period. This Policy does not insure any physical loss, damage or destruction by mold, mildew or fungus first reported to the Insurer after that twelve (12) month period.

StarStone
Part of the Core Specialty Group

# POLLUTION ENDORESMENT (SUBLIMITED)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**POLLUTION ENDORESMENT (SUBLIMITED)**

This Policy is extended to pay your expenses to extract “pollutants” from land or water if the release, discharge, dispersal, seepage, migration, release or escape of the “pollutants” is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

a. The date of direct physical “loss”; or

b. The end of the policy period.

The maximum amount that the Company will pay under this coverage endorsement in any 12 month period is $25,000 for pollution cleanup and removal.

**POLLUTION EXCLUSION**

Except as set forth above, this policy does not insure any loss or damage, claim, cost, expense or other sum directly or indirectly arising out of the discharge, dispersal, seepage, migration, release or escape of “pollutants” . “POLLUTANTS” means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

STARSTONE
Part of the Enstar Group

# MINIMUM EARNED AND WIND MINIMUM EARNED PREMIUM ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**MINIMUM EARNED AND WIND MINIMUM EARNED PREMIUM ENDORSEMENT**

The following terms and conditions will apply to this Policy:

1. If the Named Insured cancels this Policy, removes a Location or reduces the amount of coverage on a Location, a minimum premium of 35% of the original Policy premium shall become earned.

   Failure of the Named Insured to make timely payment of premium shall be considered a request by the Named Insured for the Company to cancel. In the event of such cancellation by the Company for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the Named Insured remits the full premium due within 10 days of receiving it.

2. For Locations not "Exposed to Hurricane": If the Named Insured cancels this Policy, removes a Location or reduces the amount of coverage on a Location, the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the Policy.

3. For Locations "Exposed to Hurricane": If the Named Insured cancels this Policy, removes a Location or reduces the amount of coverage on a Location and coverage existed any time during the period of June 1st to November 30th, the amount of premium the Company will return will be a percentage of the total premium determined using the below.

   The Unearned Premium is the Location premium times the Unearned Factor noted below:

| Days Policy In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

4. Subject to receipt of closing documents within 30 days of closing, this Policy allows pro-rata return premium for Locations sold, but not for loss of a management contract (unless the management contract is lost due to the sale of the property).

STARSTONE

Part of the Enstar Group

5. Subject to receipt of closing documents, this Policy allows pro-rata additional premium for Locations purchased during the policy term.

6. For Locations "Exposed to Hurricane", if added or coverage increased at an existing Location, during the term of the Policy and coverage exists at any time during the period of June 1st to November 30th, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in No. 3. above. Otherwise, it shall be pro-rata.

7. Locations of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in No. 3 above. Locations of differing kind or quality or Locations in Dade, Broward, Palm Beach, Pinellas, and Hillsborough counties of Florida must be approved by the Company prior to attachment.

8. If a Location is "Exposed to Hurricane" the provisions of this clause replace any short rate provisions stipulated in this Policy, all subject to the Minimum Earned Premium provisions.

9. "Exposed to Hurricane" is defined to include any Location within 100 miles of the closest saltwater of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands.

10. Coverage cannot be increased, nor additional Locations added if they are "Exposed to Hurricane" and a Named Storm is in existence, unless with the express written consent of the Company.

11. Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the Policy.

12. In the event of a total loss or constructive total loss to Covered Property by a Covered Cause of Loss, the premium applicable to that Covered Property shall be fully earned and no return premium will be due to the Named Insured.

All other terms, conditions and exclusions of the Policy remain unchanged.

StarStone

Part of the Core Specialty Group

# EQUIPMENT BREAKDOWN EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**EQUIPMENT BREAKDOWN EXCLUSION ENDORSEMENT**

Any other similar Exclusion within this Policy (or within any other Endorsement which forms part of this Policy) is deleted and replaced by the following:

This Policy excludes loss or damage due to:

**1.** Explosion in or of any of the following property: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes connecting any of the foregoing; or gas turbines; except that this exclusion shall not apply to explosion of accumulated gases or unconsumed fuel within the firebox or the combustion chamber of any fired vessel, other than gas turbines, or within the flues or passages which conduct the gases of combustion therefrom.

**2.** Rupture, bursting, cracking, burning or bulging of any of the following property: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes connecting any of the foregoing; hot water boilers or other equipment for heating water; pressure vessels, including equipment attached to and forming a part thereof; or gas turbines.

**3**. Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force.

**4**. Electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

All other terms and conditions of this policy remain unchanged.

STARSTONE

Part of the Enstar Group

# TERRORISM EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**TERRORISM EXCLUSION ENDORSEMENT**

A. The following definitions are added with respect to the provisions of this endorsement:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

1) Use or threat of force or violence; or

2) Commission or threat of a dangerous act; or

3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

B. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage.

C. Exception Covering Certain Fire Losses

STARSTONE

Part of the Enstar Group

If an incident of "terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

D. Application of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

STARSTONE

# EXCLUSION OF LOSS DUE TO VIRUS AND OTHER MICROORGANISMS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**EXCLUSION OF LOSS DUE TO VIRUS AND OTHER MICROORGANISMS ENDORSEMENT**

**1.** The exclusion set forth in Paragraph 2. applies to all coverages under all forms and endorsements that comprise this Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**2.** We will not pay for loss or damage caused by or resulting from any virus or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "Fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this policy.

**3.** With respect to any loss or damage subject to the exclusion in Paragraph **2.**, such exclusion supersedes any exclusion relating to "pollutants".

**4.** The following additional definitions apply to this Endorsement:

(a) "Fungus" means any plants or organisms belonging to the major group fungi, lacking chlorophyll, and including "Mold", rust, "Mildew", smuts, mushrooms, and yeasts;

(b) "Mold" means any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce "Molds".

(c) "Mildew" means a thin whitish coating of minute fungal hyphae produced on, among other things, organic matter or living organisms.

(d) "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smog, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this Policy remain unchanged.

StarStone

Part of the Core Specialty Group

# NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL EXCLUSION ENDORSEMENT**

This Policy will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

1. Nuclear Hazard - including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

2. Biological Hazard - including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

3. Chemical Hazard - including, but not limited to, any chemical agent, material, product or substance;

4. Radioactive Hazard - including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

The provisions of subparagraphs 1, 2, 3, and 4 will not apply and we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:

Where the agent, material, product or substance at issue is utilized in the course of business by a Named Insured; and

The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous nuclear, biological, chemical, or radioactive materials is accidental and is not the result of a wilful or malicious act against any persons, organizations, or property of any nature.

Only if, and to the extent required by state law, the following exception to the exclusion applies:

If a hazard excluded herein results in fire (and provided fire is a covered cause of loss), this policy will pay for the loss, damage, cost or expense caused by that fire, subject to all applicable policy provisions including the Limit of Liability on the affected covered property. Such coverage for fire applies only to direct loss or damage by fire to covered property. This coverage does not apply to insurance provided under Time Element coverages, including but not limited to, Business Income, Rental Value or Extra Expense coverage or endorsements that apply to those coverages

STARSTONE

# WAR OR WARLIKE ACTION EXCLUSIONS ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**WAR OR WARLIKE ACTION EXCLUSIONS ENDORSEMENT**

This policy does not insure any loss or damage, claim, cost, expense or other sum directly or indirectly arising out of War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

1. By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

2. By military, naval, or air forces; or

3. By an agent of any such government, power, authority, or force;

Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence, seizure or destruction;

Including any consequence of paragraphs listed herein.

All other terms and condition of the Policy remain unchanged.

STARSTONE

Part of the Enstar Group

# CYBER, ELECTRONIC DATA AND SYSTEMS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**CYBER, ELECTRONIC DATA AND SYSTEMS EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS
Notwithstanding any provision to the contrary within the Policy or any endorsements attached thereto, it is understood and agreed as follows:

EXCLUSION:

This Policy does not insure any loss, damage, destruction, distortion, erasure, corruption or alteration of Electronic Data from any cause whatsoever (including but not limited to Computer Virus) or any loss of access, any loss of use, reduction in functionality, cost, expense of any kind or of any nature whatsoever resulting therefrom.

Further, this Policy does not insure any loss or damage that directly or indirectly results from loss, damage, destruction, distortion, erasure, corruption or alteration of Electronic Data from any cause whatsoever (including but not limited to Computer Virus).

Such loss or damage as described herein is excluded regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage.

This exclusion applies regardless of whether the loss or damage arises out of or results from authorized, unauthorized, intentional, unintentional or accidental access in, of, or to any computer, communication system, file
server, network(s), networking equipment, computer system, computer hardware, computer software, data processing equipment, computer memory, microchip, microprocessor, integrated circuit or similar device.

Electronic Data means facts, concepts and information recorded, transmitted or converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment. Electronic Data also includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

Computer Virus means a set of corrupting, harmful or otherwise unauthorized instructions or code including, but not limited to any set of maliciously, intentionally, unintentionally or accidentally introduced instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature located anywhere in the world. Computer Virus includes, but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

However, in the event that a peril insured by this Policy results from any of the matters described herein, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage to insured property that was directly caused by such peril insured by this Policy and occurring within the Policy Period.

StarStone

Part of the Core Specialty Group

# SERVICE OF SUIT ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**SERVICE OF SUIT ENDORSEMENT**

In the event of our failure to pay any amount claimed to be due under this Policy, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United States in which a suit for those amounts may be brought. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in such suit may be made upon:

**Robert Kuzloski**
**Legal Department**
**StarStone US Companies**
412 Mt. Kemble Avenue, Suite G-60
Morristown, New Jersey 07960
Tel: 917 704 6008
Email: Robert.Kuzloski@corespecialty.com
www.corespecialtyinsurance.com

or his or her representative, and that in any suit instituted against us with respect to this Policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

To the extent required by the express provisions of any statute of any state, territory, or district of the United States, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy, and we hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

STARSTONE
Part of the Enstar Group

# TERRORISM RISK INSURANCE ACT REJECTION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement is a part of your Policy. Except for the changes it makes, all other terms of the Policy remain the same and apply to this endorsement:

**TERRORISM RISK INSURANCE ACT REJECTION ENDORSEMENT**

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as and extended by the Terrorism Risk Insurance Insurance Program Reauthorization Act of 2015 summarized in the disclosure notice.

It is hereby noted that the Underwriters have made available coverage for “insured losses” directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended (“TRIA”) and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

**All other terms and conditions of the policy remain unchanged.**

| | | | |
|---|---|---|---|
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |

| | | | |
|---|---|---|---|
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |
| Deltona High | 100 Wolf Pack Run | Deltona | 32724-2131 |

| | | | | | |
|---|---|---|---|---|---|
| $ 2,058,530 | $ 25,000 | $ - | $ - | $ 2,083,530 | Offices |
| $ 2,838,830 | $ 150,000 | $ - | $ - | $ 2,988,830 | Media |
| $ 1,329,060 | $ 150,000 | $ - | $ - | $ 1,479,060 | Career Labs |
| $ 2,534,700 | $ 30,000 | $ - | $ - | $ 2,564,700 | Classrooms |
| $ 1,155,150 | $ 18,000 | $ - | $ - | $ 1,173,150 | Classrooms |
| $ 1,228,420 | $ 20,000 | $ - | $ - | $ 1,248,420 | Science Labs |
| $ 2,549,660 | $ 60,000 | $ - | $ - | $ 2,609,660 | Science Labs |
| $ 3,948,250 | $ 120,000 | $ - | $ - | $ 4,068,250 | Auditorium |
| $ 3,463,580 | $ 250,000 | $ - | $ - | $ 3,713,580 | Cafeteria |
| $ 6,163,010 | $ 150,000 | $ - | $ - | $ 6,313,010 | Gym |
| $ 924,120 | $ 20,000 | $ - | $ - | $ 944,120 | Music |
| $ 820,420 | $ 55,000 | $ - | $ - | $ 875,420 | Music |
| $ 118,150 | $ 250,000 | $ - | $ - | $ 368,150 | Mechanical |
| $ 2,031,330 | $ 150,000 | $ - | $ - | $ 2,181,330 | Career lLabs |
| $ 965,940 | $ 50,000 | $ - | $ - | $ 1,015,940 | Art |
| $ 2,221,220 | $ 150,000 | $ - | $ - | $ 2,371,220 | Career Labs |
| $ 1,892,610 | $ 150,000 | $ - | $ - | $ 2,042,610 | career Labs |
| $ 100,800 | $ - | $ - | $ - | $ 100,800 | Greenhouse |
| $ 379,100 | $ 2,000,000 | $ - | $ - | $ 2,379,100 | Mechanical |

| | | | | | |
|---|---|---|---|---|---|
| $ 34,000 | $ - | $ - | $ - | $ 34,000 | Storage |
| $ 542,300 | $ 15,000 | $ - | $ - | $ 557,300 | Clinic |
| $ 1,251,880 | $ 20,000 | $ - | $ - | $ 1,271,880 | ESE Classrooms |
| $ 725,050 | $ 25,000 | $ - | $ - | $ 750,050 | Agriculture Barn |
| $ 426,190 | $ 35,500 | $ - | $ - | $ 461,690 | Concession/Storage |
| $ 250,000 | | | | $ 250,000 | HS Grandstands |

| | | | | |
|---|---|---|---|---|
| | 2 & 3 & 4 & 5 & 6 & 8 & 9 & 11 & 16 & 17 & 19 & 20 & 22 & 26 | MNC | 12,109 | 1988 |
| | 7 | MNC | 16,699 | 1988 |
| | 19 & 22 & 64 | MNC | 7,818 | 1988 |
| | 1 & 2 & 3 & 4 & 9 & 10 & 22 & 27 & 89 | MNC | 14,910 | 1988 |
| | 1 & 2 & 3 & 4 & 9 & 10 & 22 & 27 & 89 | MNC | 6,795 | 1988 |
| | 11 | MNC | 7,226 | 1988 |
| | 12 | MNC | 14,998 | 1988 |
| | 13 | MNC | 23,225 | 1988 |
| | 19 | MNC | 20,374 | 1988 |
| | 15 | MNC | 36,253 | 1988 |
| | 17 & 89 | MNC | 5,436 | 1988 |
| | 17 & 89 | MNC | 4,826 | 1988 |
| | 15 & | Frame | 695 | 1988 |
| | 19 & 22 & 64 | MNC | 11,949 | 1988 |
| | 20 | MNC | 5,682 | 1988 |
| | 19 & 22 & 64 | MNC | 13,066 | 1988 |
| | 19 & 22 & 64 | MNC | 11,133 | 1988 |
| | 23 | Frame | 840 | 1988 |
| | 64 | MNC | 2,230 | 1988 |

| | | | | |
|---|---|---|---|---|
| | 8 & 9 & 10 & 11 & 12 & 13 & 19 | Frame | 200 | 1988 |
| | | Frame | 3,190 | 1988 |
| | 2 & 89 | Frame | 7,364 | 1988 |
| | 22 | MNC | 4,265 | 1988 |
| e | 13 & 15 & 29 & 89 | MNC | 2,507 | 1988 |
| **$ 54,966,580** | | NC | 6,700 | 1988 |

| | | | | | |
|---|---|---|---|---|---|
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| **2013** | 4 | | | | |
| | 4 | | | | |
| **2013** | 4 | | | | $ 5,454,020 |

| | | | | |
|---|---|---|---|---|
| **2013** | 4 | | | |
| **2013** | 4 | | | |
| **2013** | 4 | | | |
| **2013** | | | | |
| **2013** | | | | |
| | | | | |